McFARLAND *v.* SCOTT, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

No. 93–6497.   Argued March 29, 1994—Decided June 30, 1994

BLACKMUN, J., delivered the opinion of the Court, in which STEVENS, KENNEDY, SOUTER, and GINSBURG, JJ., joined. O'CONNOR, J., filed an opinion concurring in the judgment in part and dissenting in part, *post*, p. 859. THOMAS, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA, J., joined, *post*, p. 864.

*Mandy Welch* argued the cause for petitioner. With her on the briefs was *Douglas G. Robinson.*

*Margaret Portman Griffey*, Assistant Attorney General of Texas, argued the cause for respondent. With her on the brief were *Dan Morales*, Attorney General, *Jorge Vega*, First Assistant Attorney General, *Stephani A. Stelmach*, Assistant Attorney General, and *Drew T. Durham*, Deputy Attorney General.*

---

*Briefs of *amici curiae* urging reversal were filed for the American Bar Association by *R. William Ide III, Stephen H. Sachs, Michael A. Millemann,* and *Michael A. Mello;* for the American Civil Liberties Union et al. by *Larry W. Yackle, Steven R. Shapiro,* and *Diann Y. Rust-Tierney;* and for the Texas Criminal Defense Lawyers Association by *Jim E. Lavine.*

Briefs of *amici curiae* urging affirmance were filed for the State of California et al. by *Daniel E. Lungren,* Attorney General of California, *George Williamson,* Chief Assistant Attorney General, *Dane R. Gillette,* Deputy Attorney General, and *Mark L. Krotoski,* Special Assistant Attorney General, and by the Attorneys General for their respective jurisdictions as follows: *Jimmy H. Evans* of Alabama, *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Gale A. Norton* of Colorado, *Charles M. Oberly III* of Delaware, *Robert A. Butterworth* of Florida, *Larry Echo-Hawk* of Idaho, *Chris Gorman* of Kentucky, *Richard P. Ieyoub* of Louisiana, *Mike Moore* of Mississippi, *Jeremiah W. Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Deborah T. Poritz* of New Jersey, *Michael F. Easley* of North Carolina, *Lee Fisher* of Ohio, *Susan B. Loving* of Oklahoma, *Ernest*

JUSTICE BLACKMUN delivered the opinion of the Court.

In establishing a federal death penalty for certain drug offenses under the Anti-Drug Abuse Act of 1988, 21 U. S. C. § 848(e), Congress created a statutory right to qualified legal representation for capital defendants in federal habeas corpus proceedings. § 848(q)(4)(B). This case presents the question whether a capital defendant must file a formal habeas corpus petition in order to invoke this statutory right and to establish a federal court's jurisdiction to enter a stay of execution.

I

Petitioner Frank Basil McFarland was convicted of capital murder on November 13, 1989, in the State of Texas and sentenced to death. The Texas Court of Criminal Appeals affirmed the conviction and sentence, *McFarland* v. *State*, 845 S. W. 2d 824 (1992), and on June 7, 1993, this Court denied certiorari. 508 U. S. 963. Two months later, on August 16, 1993, the Texas trial court scheduled McFarland's execution for September 23, 1993. On September 19, Mc-Farland filed a *pro se* motion requesting that the trial court stay or withdraw his execution date to allow the Texas Resource Center an opportunity to recruit volunteer counsel for his state habeas corpus proceeding. Texas opposed a stay of execution, arguing that McFarland had not filed an application for writ of habeas corpus and that the court thus lacked jurisdiction to enter a stay. The trial court declined to appoint counsel, but modified McFarland's execution date to October 27, 1993.

*D. Preate, Jr.,* of Pennsylvania, *Jeffrey B. Pine* of Rhode Island, *T. Travis Medlock* of South Carolina, *Charles W. Burson* of Tennessee, *Jan Graham* of Utah, *James S. Gilmore III* of Virginia, and *Joseph B. Meyer* of Wyoming; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger* and *Charles L. Hobson.*

*Tim Curry, Charles M. Mallin, John Vance,* and *Steven C. Hilbig* filed a brief for the Tarrant, Bexar, Dallas, and Harris County District Attorneys as *amicus curiae.*

On October 16, 1993, the Resource Center informed the trial court that it had been unable to recruit volunteer counsel and asked the court to appoint counsel for McFarland. Concluding that Texas law did not authorize the appointment of counsel for state habeas corpus proceedings, the trial court refused either to appoint counsel or to modify petitioner's execution date. McFarland then filed a *pro se* motion in the Texas Court of Criminal Appeals requesting a stay and a remand for appointment of counsel. The court denied the motion without comment.

Having failed to obtain either the appointment of counsel or a modification of his execution date in state court, McFarland, on October 22, 1993, commenced the present action in the United States District Court for the Northern District of Texas by filing a *pro se* motion stating that he "wish[ed] to challenge [his] conviction and sentence under [the federal habeas corpus statute,] 28 U. S. C. Sec. 2254." App. 42. McFarland requested the appointment of counsel under 21 U. S. C. § 848(q)(4)(B) and a stay of execution to give that counsel time to prepare and file a habeas corpus petition.[1]

---

[1] Traditionally in Texas, capital defendants had invoked their federal right to appointed counsel by filing a perfunctory habeas corpus petition, often reciting a single claim. Texas customarily did not oppose a stay following the filing of such a *pro forma* petition, and federal district courts regularly granted a stay of execution under these circumstances and appointed counsel to file a legally sufficient habeas application. Tr. of Oral Arg. 32–33.

In the month prior to McFarland's scheduled execution, however, a capital defendant facing imminent execution filed such a *pro forma* habeas petition in District Court. Texas did not oppose the filing, but the District Court denied the stay and dismissed the skeletal petition on the merits. *Gosch* v. *Collins*, No. SA–93–CA–731 (WD Tex., Sept. 15, 1993). The Court of Appeals for the Fifth Circuit affirmed, *Gosch* v. *Collins*, 8 F. 3d 20 (1993), cert. dism'd *sub nom. Gosch* v. *Scott*, *post*, p. 1216. Gosch then filed a subsequent, substantive habeas petition, which the District Court dismissed as successive and abusive. *Gosch* v. *Collins*, No. SA–93–CA–736 (WD Tex., Oct. 12, 1993).

In a letter supporting McFarland's motion in the District Court, the Resource Center indicated that the *Gosch* case had left capital defendants

The District Court denied McFarland's motion on October 25, 1993, concluding that because no "post conviction proceeding" had been initiated pursuant to 28 U. S. C. § 2254 or § 2255, petitioner was not entitled to appointment of counsel and the court lacked jurisdiction to enter a stay of execution. App. 77. The court later denied a certificate of probable cause to appeal.

On October 26, the eve of McFarland's scheduled execution, the Court of Appeals for the Fifth Circuit denied his application for stay. 7 F. 3d 47. The court noted that federal law expressly authorizes federal courts to stay state proceedings while a federal habeas corpus proceeding is pending, 28 U. S. C. § 2251, but held that no such proceeding was pending, because a "motion for stay and for appointment of counsel [is not] the equivalent of an application for habeas relief." 7 F. 3d, at 49. The court concluded that any other federal judicial interference in state-court proceedings was barred by the Anti-Injunction Act, 28 U. S. C. § 2283.

Shortly before the Court of Appeals ruled, a Federal Magistrate Judge located an attorney willing to accept appointment in McFarland's case and suggested that if the attorney would file a skeletal document entitled "petition for writ of habeas corpus," the District Court might be willing to appoint him and grant McFarland a stay of execution. The attorney accordingly drafted and filed a *pro forma* habeas petition, together with a motion for stay of execution and appointment of counsel. As in the *Gosch* case, see n. 1, *supra*, despite the fact that Texas did not oppose a stay, the District Court found the petition to be insufficient and denied the motion for stay on the merits. *McFarland* v. *Collins*, No. 4:93–CV–723–A (WD Tex., Oct. 26, 1993).

On October 27, 1993, this Court granted a stay of execution in McFarland's original suit pending consideration of

reluctant to invoke their federal right to counsel by filing *pro forma* habeas petitions, given the substantial possibility that the petition might be dismissed on the merits, and that any habeas petition later filed would be dismissed summarily as an abuse of the writ. See App. 73–74.

his petition for certiorari. 510 U. S. 938. The Court later granted certiorari, 510 U. S. 989 (1993), to resolve an apparent conflict with *Brown* v. *Vasquez,* 952 F. 2d 1164 (CA9 1991).

## II

### A

Section 848(q)(4)(B) of Title 21 provides:

> "In any *post conviction proceeding* under section 2254 or 2255 of title 28 seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services *shall be entitled* to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9)" (emphasis added).

On its face, this statute grants indigent capital defendants a mandatory right to qualified legal counsel[2] and related services "[i]n any [federal] post conviction proceeding." The express language does not specify, however, how a capital defendant's right to counsel in such a proceeding shall be invoked.

Neither the federal habeas corpus statute, 28 U. S. C. § 2241 *et seq.,* nor the rules governing habeas corpus proceedings define a "post conviction proceeding" under § 2254 or § 2255 or expressly state how such a proceeding shall be commenced. Construing § 848(q)(4)(B) in light of its related pro-

---

[2] Counsel appointed to represent capital defendants in postconviction proceedings must meet more stringent experience criteria than attorneys appointed to represent noncapital defendants under the Criminal Justice Act of 1964, 18 U. S. C. § 3006A. At least one attorney appointed to represent a capital defendant must have been authorized to practice before the relevant court for at least five years, and must have at least three years of experience in handling felony cases in that court. 21 U. S. C. § 848(q)(6).

visions, however, indicates that the right to appointed counsel adheres prior to the filing of a formal, legally sufficient habeas corpus petition. Section 848(q)(4)(B) expressly incorporates 21 U. S. C. § 848(q)(9), which entitles capital defendants to a variety of expert and investigative services upon a showing of necessity:

> "Upon a finding in ex parte proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, . . . the court *shall authorize* the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore" (emphasis added).

The services of investigators and other experts may be critical in the preapplication phase of a habeas corpus proceeding, when possible claims and their factual bases are researched and identified. Section 848(q)(9) clearly anticipates that capital defense counsel will have been appointed under § 848(q)(4)(B) before the need for such technical assistance arises, since the statute requires "the defendant's attorneys to obtain such services" from the court. § 848(q)(9). In adopting § 848(q)(4)(B), Congress thus established a right to preapplication legal assistance for capital defendants in federal habeas corpus proceedings.

This interpretation is the only one that gives meaning to the statute as a practical matter. Congress' provision of a right to counsel under § 848(q)(4)(B) reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." § 848(q)(7). An attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial, because "[t]he complexity of our jurisprudence in this area . . . makes it unlikely that capital defendants will be

able to file successful petitions for collateral relief without the assistance of persons learned in the law." *Murray* v. *Giarratano*, 492 U. S. 1, 14 (1989) (KENNEDY, J., joined by O'CONNOR, J., concurring in judgment); see also *id.*, at 28 (STEVENS, J., joined by Brennan, Marshall, and BLACKMUN, JJ., dissenting) ("[T]his Court's death penalty jurisprudence unquestionably is difficult even for a trained lawyer to master").

Habeas corpus petitions must meet heightened pleading requirements, see 28 U. S. C. § 2254 Rule 2(c), and comply with this Court's doctrines of procedural default and waiver, see *Coleman* v. *Thompson*, 501 U. S. 722 (1991). Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face, see 28 U. S. C. § 2254 Rule 4, and to deny a stay of execution where a habeas petition fails to raise a substantial federal claim, see *Barefoot* v. *Estelle*, 463 U. S. 880, 894 (1983). Moreover, should a defendant's *pro se* petition be summarily dismissed, any petition subsequently filed by counsel could be subject to dismissal as an abuse of the writ. See *McCleskey* v. *Zant*, 499 U. S. 467, 494 (1991). Requiring an indigent capital petitioner to proceed without counsel in order to obtain counsel thus would expose him to the substantial risk that his habeas claims never would be heard on the merits. Congress legislated against this legal backdrop in adopting § 848(q)(4)(B), and we safely assume that it did not intend for the express requirement of counsel to be defeated in this manner.

The language and purposes of § 848(q)(4)(B) and its related provisions establish that the right to appointed counsel includes a right to legal assistance in the preparation of a habeas corpus application. We therefore conclude that a "post conviction proceeding" within the meaning of § 848(q)(4)(B) is commenced by the filing of a death row defendant's motion requesting the appointment of counsel for his federal habeas

corpus proceeding.[3]   McFarland filed such a motion and was entitled to the appointment of a lawyer.

## B

Even if the District Court had granted McFarland's motion for appointment of counsel and had found an attorney to represent him, this appointment would have been meaningless unless McFarland's execution also was stayed.   We therefore turn to the question whether the District Court had jurisdiction to grant petitioner's motion for stay.

Federal courts cannot enjoin state-court proceedings unless the intervention is authorized expressly by federal statute or falls under one of two other exceptions to the Anti-Injunction Act.   See *Mitchum* v. *Foster*, 407 U. S. 225, 226 (1972).   The federal habeas corpus statute grants any federal judge "before whom a *habeas corpus proceeding is pending*" power to stay a state-court action "for any matter involved in the habeas corpus proceeding."   28 U. S. C. § 2251 (emphasis added).   McFarland argues that his request for counsel in a "post conviction proceeding" under § 848(q)(4)(B) initiated a "habeas corpus proceeding" within the meaning of § 2251, and that the District Court thus had jurisdiction to enter a stay.   Texas contends, in turn, that even if a "post conviction proceeding" under § 848(q)(4)(B) can be

---

[3] JUSTICE THOMAS argues in dissent that reading § 848(q)(4)(B) to allow the initiation of a habeas corpus proceeding through the filing of a motion for appointment of counsel ignores the fact that such proceedings traditionally have been commenced by the filing of a habeas corpus petition and creates a divergent practice for capital defendants.   *Post*, at 872, n. 3. As JUSTICE O'CONNOR agrees, *post*, at 860, however, § 848(q)(4)(B) bestows upon capital defendants a mandatory right to counsel, including a right to preapplication legal assistance, that is unknown to other criminal defendants.   Because noncapital defendants have no equivalent right to the appointment of counsel in federal habeas corpus proceedings, it is not surprising that their habeas corpus proceedings typically will be initiated by the filing of a habeas corpus petition.

triggered by a death row defendant's request for appointment of counsel, no "habeas corpus proceeding" is "pending" under § 2251, and thus no stay can be entered, until a legally sufficient habeas petition is filed.

The language of these two statutes indicates that the sections refer to the same proceeding. Section 848(q)(4)(B) expressly applies to "any post conviction proceeding under section 2254 or 2255"—the precise "habeas corpus proceeding[s]" that § 2251 involves. The terms "post conviction" and "habeas corpus" also are used interchangeably in legal parlance to refer to proceedings under §§ 2254 and 2255. We thus conclude that the two statutes must be read *in pari materia* to provide that once a capital defendant invokes his right to appointed counsel, a federal court also has jurisdiction under § 2251 to enter a stay of execution. Because § 2251 expressly authorizes federal courts to stay state-court proceedings "for any matter involved in the habeas corpus proceeding," the exercise of this authority is not barred by the Anti-Injunction Act.

This conclusion by no means grants capital defendants a right to an automatic stay of execution. Section 2251 does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court. Under ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution. But the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims. Where this opportunity is not afforded, "[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper." *Barefoot*, 463 U. S., at 889. On the other hand, if a dilatory capital defendant inexcusably ignores this opportunity and flouts the available processes, a federal court presumably would not abuse its discretion in denying a stay of execution.

## III

A criminal trial is the "main event" at which a defendant's rights are to be determined, and the Great Writ is an extraordinary remedy that should not be employed to "relitigate state trials." *Id.*, at 887. At the same time, criminal defendants are entitled by federal law to challenge their conviction and sentence in habeas corpus proceedings. By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty.

We conclude that a capital defendant may invoke this right to a counseled federal habeas corpus proceeding by filing a motion requesting the appointment of habeas counsel, and that a district court has jurisdiction to enter a stay of execution where necessary to give effect to that statutory right. McFarland filed a motion for appointment of counsel and for stay of execution in this case, and the District Court had authority to grant the relief he sought.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE O'CONNOR, concurring in the judgment in part and dissenting in part.

I agree with the Court's conclusion that 21 U. S. C. § 848 entitles capital defendants pursuing federal habeas corpus relief to a properly trained attorney. I also agree that this right includes legal assistance in preparing a habeas petition. Thus, the Court correctly holds that a defendant need not file a habeas petition to invoke the right to counsel. *Ante,* at 856–857. I write separately, however, because I disagree with the Court's conclusion that 28 U. S. C. § 2251 allows a district court to stay an execution pending counsel's prepara-

tion of an application for a writ of habeas corpus. *Ante,* at 857–858.

As the Court explains, § 848(q) must be read to apply prior to the filing of a habeas petition. It is almost meaningless to provide a lawyer to pursue claims on federal habeas if the lawyer is not available to help prepare the petition. First, the habeas petition, unlike a complaint, must allege the factual underpinning of the petitioner's claims. See Habeas Corpus Rule 2(c) ("The petition . . . shall specify all the grounds for relief which are available to the petitioner . . . and shall set forth in summary form the facts supporting each of the grounds thus specified"). Furthermore, district courts are authorized to summarily dismiss petitions which appear on their face to be meritless. See Habeas Corpus Rule 4. And our carefully crafted doctrines of waiver and abuse of the writ make it especially important that the first petition adequately set forth all of a state prisoner's colorable grounds for relief. Indeed, Congress expressly recognized "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." 21 U. S. C. § 848(q)(7). Moreover, the statute entitles capital defendants not only to qualified counsel, but also to "investigative, expert or other services . . . reasonably necessary for the representation of the defendant." § 848(q)(9). For such services to be meaningful in the habeas context, they also must be available prior to the filing of a first habeas petition. See *ante,* at 855.

In my view, however, petitioner is not entitled under present law to a stay of execution while counsel prepares a habeas petition. The habeas statute provides in relevant part that "[a] justice or judge of the United States before whom a habeas corpus proceeding is pending, may . . . stay any proceeding against the person detained in any State court." 28 U. S. C. § 2251. While this provision authorizes a stay in the habeas context, it does not explicitly allow a stay prior to the filing of a petition, and our cases have made it clear

that capital defendants must raise at least some colorable federal claim before a stay of execution may be entered.

> "[F]ederal habeas [is not] a means by which a defendant is entitled to delay an execution indefinitely. The procedures adopted to facilitate the orderly consideration and disposition of habeas petitions are not legal entitlements that a defendant has a right to pursue irrespective of the contribution these procedures make toward uncovering constitutional error." *Barefoot* v. *Estelle*, 463 U. S. 880, 887–888 (1983).

See also *Autry* v. *Estelle*, 464 U. S. 1 (1983) *(per curiam)* (no automatic stay in this Court for review of a first federal habeas petition where petition lacks merit).

Petitioner has not filed anything describing the nature of his claims, if any. As a consequence, the Court's approach, which permits a stay of execution in the absence of any showing of a constitutional claim, conflicts with the sound principle underlying our precedents that federal habeas review exists only to review errors of constitutional dimension, and that the habeas procedures may be invoked only when necessary to resolve a constitutional claim. *Barefoot, supra,* at 892–896; see *Townsend* v. *Sain,* 372 U. S. 293, 312 (1963).

Congress knows how to give courts the broad authority to stay proceedings of the sort urged by petitioner. For example, Congress expressly provided this Court with authority to grant stays pending the filing of a petition for a writ of certiorari:

> "In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court." 28 U. S. C. § 2101(f).

The absence of such explicit authority in the habeas statute is evidence that Congress did not intend federal courts to enter stays of execution in the absence of some showing on the merits.

Moreover, just as the counsel provisions of § 848(q) are intended to apply before the submission of a petition, the text and structure of the federal habeas statute suggest that the stay provision contained in § 2251 is intended to apply only after a petition has been filed. Although the statute does not specifically identify when "a habeas corpus proceeding is pending," *ibid.*, other provisions of the statute show that there is no "pending" habeas corpus proceeding until an application for habeas corpus has been filed, which is the mechanism for "institut[ing]" a proceeding under the statute. For example, § 2254(d) refers to "any proceeding *instituted in a Federal court by an application* for a writ of habeas corpus" (emphasis added). Another statute setting filing fees provides that "the parties *instituting* any . . . proceeding in [district court must] pay a filing fee of $120, except that on application for a writ of habeas corpus the filing fee shall be $5." 28 U. S. C. § 1914(a) (emphasis added). This indicates that the institution of a proceeding requires the filing of an "application," which petitioner has not done. See § 2242 (an "[a]pplication for a writ of habeas corpus . . . shall allege the facts concerning the applicant's commitment or detention"); Habeas Corpus Rule 2(a) ("[T]he application shall be in the form of a petition").

The rules governing § 2254 cases confirm this conclusion. Although originally enacted by this Court, the rules were amended by Congress and approved as amended. See Pub. L. 94–426, § 1, 90 Stat. 1334 (1976). By their terms, the habeas rules only apply to "procedure[s] in the United States district courts on *applications* under 28 U. S. C. § 2254." Rule 1(a) (emphasis added). See also Habeas Corpus Rule 2 (referring to "[a]pplicants in present custody" and "[a]pplicants subject to future custody"). These same rules also

make an express exception for the appointment of counsel "at any stage of the case," Rule 8(c), a further indication that the rules otherwise apply *after* an application for a writ of habeas corpus has been filed in the district court. This consistent textual focus on the existence of an "application" leads me to conclude that the district court's authority to issue a stay pursuant to § 2251 also requires the filing of an "application."*

Congress is apparently aware of the clumsiness of its handiwork in authorizing appointment of an attorney under 21 U. S. C. § 848(q)(4)(B) "[i]n any post conviction proceeding," while leaving intact 28 U. S. C. § 2251, which authorizes a stay only when a "habeas corpus proceeding is pending." See S. 1441, § 3(b), 103d Cong., 1st Sess. (1993). The remedy for this problem, however, lies with Congress, and not, as the Court would have it, by reading the Anti-Drug Abuse Act of 1988, Pub. L. 100–690, 102 Stat. 4393, to impliedly amend the habeas statute. See *Regional Rail Reorganization Act Cases*, 419 U. S. 102, 134 (1974). Such a reading is inconsistent with our prior cases and with the important federalism principles underlying the limited habeas jurisdiction of the federal courts. I would leave the matter to Congress to resolve. Finally, prisoners can avoid the need for a stay by filing a prompt request for appointment of counsel well in advance of the scheduled execution.

In the judgment currently under review, the Court of Appeals for the Fifth Circuit held that petitioner's "motion for stay of execution and appointment of counsel is . . . denied." 7 F. 3d 47, 49 (1993) *(per curiam)*. Because I agree with the Court that petitioner is entitled to an attorney, I concur

---

*Because the habeas statute itself addresses when district courts may order a stay of state proceedings, the All Writs Act, 28 U. S. C. § 1651, does not provide a residual source of authority for a stay. "Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pennsylvania Bureau of Correction* v. *United States Marshals Service*, 474 U. S. 34, 43 (1985).

in the judgment reversing the Court of Appeals on this point. But because in my view petitioner cannot obtain a stay of execution before filing a petition for a writ of habeas corpus in the District Court, I would affirm the judgment in part. I therefore respectfully dissent from the Court's contrary determination.

JUSTICE THOMAS, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, dissenting.

Today the Court holds that a state prisoner under sentence of death may invoke a federal district court's jurisdiction to obtain appointed counsel under 21 U. S. C. § 848(q) (4)(B) and to obtain a stay of execution under 28 U. S. C. § 2251 simply by filing a motion for appointment of counsel. In my view, the Court's conclusion is at odds with the terms of both statutory provisions. Each statute allows a federal district court to take action (appointing counsel under § 848(q)(4)(B) or granting a stay under § 2251) only after a habeas proceeding has been commenced. As JUSTICE O'CONNOR points out, such a proceeding is initiated under the habeas corpus statute, 28 U. S. C. § 2241 *et seq.*, only with the filing of an application for a writ of habeas corpus. I therefore agree with JUSTICE O'CONNOR that a district court lacks jurisdiction to grant a stay under § 2251 until such an application has been filed. See *ante*, at 860–863 (concurring in judgment in part and dissenting in part). But because § 848(q)(4)(B), like § 2251, conditions a court's power to act upon the existence of a habeas proceeding, I would also hold that a district court cannot appoint counsel until an application for habeas relief has been filed. I therefore respectfully dissent.

I

In its attempt to discern Congress' intent regarding the point at which § 848(q)(4)(B) makes counsel available, the Court spends a good deal of time considering how, as a "practical matter," the provision of counsel can be made meaning-

ful. See *ante,* at 855. See also *ante,* at 860 (O'CONNOR, J., concurring in judgment in part and dissenting in part). But here, as in any case of statutory interpretation, our primary guide to Congress' intent should be the text of the statute. The relevant terms of § 848(q)(4)(B) state that an indigent prisoner shall be entitled to an attorney and "investigative, expert, or other reasonably necessary services" only "[i]n any post conviction proceeding under section 2254 . . . seeking to vacate or set aside a death sentence." The clear import of the provision is that an indigent prisoner is not entitled to an attorney or to other services under the section *until* a "post conviction proceeding under section 2254" exists—that is, not until after such a proceeding has been commenced in district court.

The Court appears to acknowledge that a § 2254 proceeding must be initiated before counsel can be appointed under § 848(q)(4)(B), but asserts that "[n]either the federal habeas corpus statute . . . nor the rules governing habeas corpus proceedings define a 'post conviction proceeding' under § 2254 . . . or expressly state how such a proceeding shall be commenced." *Ante,* at 854. It is difficult to imagine, however, how the federal habeas statute could be more "express" on the matter. As JUSTICE O'CONNOR explains in detail, the statute makes clear that a "proceeding" is commenced only with the filing of an application for a writ of habeas corpus. See *ante,* at 862–863 (concurring in judgment in part and dissenting in part).[1] Section 2254(d), for example, provides that the well-known presumption of correctness of state court findings of fact attaches "[i]n any proceeding *instituted*

---

[1] JUSTICE O'CONNOR, of course, discusses the question of how a habeas "proceeding" is commenced in the context of determining whether a district court has jurisdiction under § 2251 to enter a stay of execution prior to the filing of an application for habeas relief. See 28 U. S. C. § 2251 ("A justice or judge of the United States before whom a *habeas corpus proceeding is pending,* may . . . stay any proceeding against the person detained" under state authority) (emphasis added).

in a Federal court *by an application for a writ of habeas corpus* by a person in custody pursuant to the judgment of a State court." 28 U. S. C. § 2254(d) (emphasis added). See also § 2241(d) (power to grant the writ is not triggered except by "application for a writ of habeas corpus"). Cf. § 1914 (equating the filing of an "application for a writ of habeas corpus" with the "instituting" of a "proceeding" for purposes of setting filing fees).[2]

By providing that death-sentenced prisoners may obtain counsel "[i]n any post conviction proceeding under section 2254," Congress referred to a well-known form of action with established contours. We should therefore assume that Congress intended to incorporate into § 848(q)(4)(B) the settled understanding of what constitutes a "proceeding under section 2254" in the habeas statute. Cf. *Miles* v. *Apex Marine Corp.*, 498 U. S. 19, 32 (1990). Indeed, the similarity between the language in §§ 848(q)(4)(B) and 2254(d) suggests that Congress used the phrase "[i]n any post conviction proceeding under section 2254" in the former provision as a shorthand form of the language "[i]n any proceeding instituted in a Federal court by an application for a writ of habeas corpus" contained in the latter. In short, the terms of § 848(q)(4)(B) indicate that Congress intended that legal assistance be made available under the provision only after a habeas proceeding has been commenced by the filing of an application for habeas relief.

---

[2] The procedural rules governing § 2254 cases confirm that it is the filing of a habeas petition that commences a habeas proceeding. Rule 3 of the Federal Rules of Civil Procedure clearly states that "[a] civil action is commenced by filing a complaint." The Federal Rules of Civil Procedure apply in the context of habeas suits to the extent that they are not inconsistent with the Habeas Corpus Rules. See 28 U. S. C. § 2254 Rule 11; Fed. Rule Civ. Proc. 81(a)(2). The analogue to a complaint in the habeas context is an "application . . . in the form of a petition for a writ of habeas corpus." 28 U. S. C. § 2254 Rule 2(a). Thus, a habeas action is commenced with the filing of such an application.

The Court rejects this interpretation. Rather than turning to the habeas statute for guidance in determining when a "proceeding under section 2254" commences, the Court bases its examination of the question primarily on what it perceives to be the time at which legal assistance would be most useful to a death-sentenced prisoner. See *ante*, at 855–856. From this analysis, the Court concludes that a " 'post conviction proceeding' within the meaning of § 848(q)(4)(B) is commenced by the filing of a death row defendant's [preapplication] motion requesting the appointment of counsel." *Ante*, at 856. The only textual provision the Court cites in support of that conclusion is 21 U. S. C. § 848(q)(9), which states:

> "Upon a finding in ex parte proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore . . . ."

At bottom, the Court's textual argument amounts to the following: because investigative, expert, and other services described in § 848(q)(9) "may be critical in the preapplication phase of a habeas corpus proceeding," *ante*, at 855, and because § 848(q)(9) provides that those services are to be obtained by the defendant's attorneys, an attorney must be appointed "before the need for such technical assistance arises"—that is, prior to the filing of an application for habeas relief. *Ibid.* Thus, the sole textual source upon which the Court relies is the statement that "the defendant's attorneys" are "authorize[d]" to obtain services on the defendant's behalf.

In my view, such an oblique reference to "the defendant's attorneys" is a remarkably thin reed upon which to rest Congress' supposed intention to "establis[h] a right to preapplication legal assistance for capital defendants in federal

habeas corpus proceedings." *Ibid.* Indeed, had Congress intended to establish such a "right," it surely would have done so in §848(q)(4)(B), which provides for appointment of counsel, rather than in §848(q)(9), which sets forth the mechanics of how "investigative, expert or other services" are to be obtained.

Moreover, §848(q)(9) simply does not address the issue of *when* "investigative, expert or other services" are to be made available to a death-sentenced prisoner. The Court asserts that such services "may be critical" in the preapplication period. *Ibid.* Yet the issue of when these services are to be available, like the question of when a prisoner is entitled to counsel, is expressly addressed not in §848(q)(9), but in §848(q)(4). See §848(q)(4)(A) (indigent defendant "charged with a [federal] crime which may be punishable by death" may obtain "representation [and] investigative, expert, or other reasonably necessary services" both "before judgment" and "after the entry of a judgment imposing a sentence of death but before the execution of that judgment"); see also §848(q)(4)(B) (indigent prisoner "seeking to vacate or set aside [his] death sentence" may obtain "representation [and] investigative, expert, or other reasonably necessary services" "[i]n any post conviction proceeding under section 2254 or 2255"). And for purposes of this case, §848(q)(4)(B) resolves the issue: Such services are to be made available only after a "post conviction proceeding under 2254" has been commenced.

As for the policy concerns rehearsed by the Court, I agree that legal assistance prior to the filing of a federal habeas petition can be very valuable to a prisoner. See *ante,* at 855–856. That such assistance is valuable, however, does not compel the conclusion that Congress intended the Federal Government to *pay* for it under §848(q). As the Ninth Circuit has aptly observed: "Section 848(q) is *a funding statute.* It provides for the appointment of attorneys and the furnishing of investigative services for [federal] defendants or habeas corpus petitioners seeking to vacate or set aside a

death sentence." *Jackson* v. *Vasquez,* 1 F. 3d 885, 888 (1993) (emphasis added). It might well be a wise and generous policy for the Government to provide prisoners appointed counsel prior to the filing of a habeas petition, but that is not a policy declared by Congress in the terms of § 848(q)(4)(B).

Implicit in the Court's analysis is the assumption that it would be unthinkable for Congress to grant an entitlement to appointed counsel, but to have that entitlement attach only upon the filing of a habeas petition. The Court suggests that its interpretation is required because it is "the *only* one that gives meaning to the statute as a practical matter." *Ante,* at 855 (emphasis added). Any other interpretation, according to the Court, would "requir[e] an indigent capital petitioner to proceed without counsel in order to obtain counsel." *Ante,* at 856. Yet under the interpretation of § 848(q)(4)(B) I have outlined above, Congress has not required death-sentenced prisoners to proceed *without counsel* during the preapplication period; rather, it has merely concluded that such prisoners would proceed without counsel *funded under* § 848(q)(4)(B).

Moreover, leaving prisoners without counsel appointed under § 848(q)(4)(B) during the preapplication period would be fully reasonable. Congress was no doubt aware that alternative sources of funding for preapplication legal assistance exist for death-sentenced prisoners. Petitioner, for example, is represented by the Texas Resource Center, which has been "designated . . . a Community Defender Organization in accordance with 18 U. S. C. § 3006A for the purpose of providing representation, assistance, information, and other related services to eligible persons and appointed attorneys in connection with" federal habeas corpus cases arising from capital convictions. Brief for Petitioner 4, n. 3 (internal quotation marks and citation omitted). The center, which is "funded primarily by a grant from the Administrative Office of the United States Courts," *id.,* at 5, n. 4, became involved in petitioner's case soon after his conviction was affirmed

by the Texas Court of Criminal Appeals. Thus, although petitioner did not have preapplication assistance of counsel made available to him under § 848(q)(4)(B), he still could benefit from federally funded legal assistance.

In addition, it seems likely that Congress expected that the States would also shoulder some of the burden of providing preapplication legal assistance to indigent death-sentenced prisoners. Cf. *Hill* v. *Lockhart*, 992 F. 2d 801, 803 (CA8 1993) ("A state that has elected to impose the death penalty should provide adequate funding for the procedures it has adopted to properly implement that penalty"). Defendants under a state-imposed sentence of death must exhaust state remedies by presenting their claims in state court prior to coming to federal court. See 28 U. S. C. § 2254(b). See also *Coleman* v. *Thompson*, 501 U. S. 722 (1991). Given this exhaustion requirement, it would have been logical for Congress, in drafting § 848(q)(4)(B), to assume that by the time a death-sentenced prisoner reaches federal court, "possible claims and their factual bases" will already have been "researched and identified." *Ante*, at 855. Indeed, if the claims have not been identified and presented to state courts, a prisoner cannot proceed on federal habeas. See *Coleman, supra*, at 731 ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims"). Thus, it would not have been unreasonable for Congress to require prisoners to meet the ordinary requirement for invoking a federal court's habeas jurisdiction—namely, the filing of an adequate application for habeas corpus relief—prior to obtaining an attorney under § 848(q)(4)(B).

## II

Had the Court ended its analysis with the ruling that an indigent death-sentenced prisoner is entitled to counsel under § 848(q)(4)(B) prior to filing an application for habeas relief, today's decision would have an impact on federal coffers, but would not expand the power of the federal courts

to interfere with States' legitimate interests in enforcing the judgments of their criminal justice systems. The Court, however, does not stop with its decision on availability of counsel; rather, it goes on to hold that upon a motion for appointment of counsel, a death-sentenced prisoner is also able to obtain a stay of his execution in order to permit counsel "to research and present [his] habeas claims." *Ante*, at 858.

The Court reaches its decision through the sheerest form of bootstrapping. After reasoning that "a proceeding under section 2254" for purposes of § 848(q)(4)(B) commences with the filing of a motion for appointment of counsel, the Court imports that meaning of "proceeding" into 28 U. S. C. § 2251, which provides that a federal judge "before whom *a habeas corpus proceeding is pending*" may "stay any proceeding against the person detained in any State court" (emphasis added). The Court thus concludes that "once a capital defendant invokes his right to appointed counsel, a federal court also has jurisdiction under § 2251 to enter a stay of execution." *Ante*, at 858. I agree with the Court that the "language of [§§ 848(q)(4)(B) and 2251] indicates that the sections refer to the same proceeding." *Ibid.* But the method the Court employs to impart meaning to the term "proceeding" in the two provisions is simply backwards. Section 848(q)(4)(B) was enacted as part of the Anti-Drug Abuse Act of 1988, Pub. L. 100–690, 102 Stat. 4393, long after the enactment of the habeas statute. As noted above, in using the terms "post conviction proceeding under section 2254" in § 848(q)(4)(B), Congress was referring to a form of action whose contours were well established under the habeas statute. As a matter of basic statutory construction, then, we should look to the habeas statute to inform our construction of § 848(q)(4)(B), not vice versa.

The reason the Court pursues a different approach is clear: There is no basis in the habeas statute for reading "habeas corpus proceeding" in § 2251 to mean an action commenced

by the filing of a motion for appointment of counsel. Thus, to avoid the conclusion that a "proceeding" in § 2251 is commenced by the filing of an application for habeas relief, the Court is forced to hold that by enacting § 848(q), Congress amended the habeas statute *sub silentio*. Cf. *ante*, at 863 (O'CONNOR, J., concurring in judgment in part and dissenting in part).[3] In effect, the Court determines that Congress, in providing death-sentenced prisoners with federally funded counsel in § 848(q)(4)(B), intended to expand the jurisdiction of the federal courts to stay state proceedings under the habeas statute. Yet § 848(q)(4)(B) in no way suggests a connection between the availability of counsel and the stay power; indeed, the provision does not even mention the term "stay." A proper interpretation of the provisions at issue here, however, avoids the dubious assumption that Congress intended to effect such an amendment of the habeas statute by implication. Correctly interpreted, both §§ 848(q)(4)(B) and 2251 refer to a "proceeding" that begins with the filing of an application for habeas relief, after which a federal court has jurisdiction to enter a stay and to appoint counsel.

In reaching its expansive interpretation of § 2251, the Court ignores the fact that the habeas statute provides federal courts with exceptional powers. Federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority."

---

[3] Presumably, the Court's holding regarding a federal court's jurisdiction to stay a state proceeding only applies when a state prisoner is "seeking to vacate or set aside a death sentence." 21 U. S. C. § 848(q)(4)(B). Thus, after today, the "proceeding" to which § 2251 refers will have two different meanings depending upon whether the stay is sought by a capital or noncapital prisoner. In the former situation, a "habeas corpus proceeding" under § 2251 will be "pending" once a motion for appointment of counsel is filed. In the latter, no matter how many preliminary motions a prisoner might file, a proceeding will not be "pending" until an application for habeas relief is filed.

*Duckworth* v. *Eagan*, 492 U. S. 195, 210 (1989) (O'CONNOR, J., concurring) (internal quotation marks and citation omitted). See also *ante,* at 863 (O'CONNOR, J., concurring in judgment in part and dissenting in part). We should not lightly assume that Congress intended to expand federal courts' habeas power; this is particularly true regarding their power directly to interfere with state proceedings through granting stays.

Moreover, as JUSTICE O'CONNOR observes, in expanding the federal courts' power to grant stays, the Court's decision "conflicts with the sound principle underlying our precedents that federal habeas review exists only to review errors of constitutional dimension." *Ante,* at 861 (concurring in judgment in part and dissenting in part). Under the Court's interpretation of § 2251, a prisoner may obtain a stay of execution without presenting a single claim to a federal court. Indeed, under the Court's reading of the statute, a federal district court determining whether to enter a stay will no longer have to evaluate whether a prisoner has presented a potentially meritorious constitutional claim. Rather, the court's task will be to determine whether a "capital defendant" who comes to federal court shortly before his scheduled execution has been "dilatory" in pursuing his "right to counsel." *Ante,* at 858. If he has not been "dilatory," the district court presumably must enter a stay to preserve his "right to counsel" and his "right for that counsel meaningfully to research and present [his] habeas claims." *Ibid.* In my view, simply by providing for the appointment of counsel in habeas cases, Congress did not intend to achieve such an extraordinary result.

\* \* \*

Because petitioner had not filed an application for habeas relief prior to filing his motion for stay of execution and for appointment of counsel, the courts below correctly determined that they lacked jurisdiction to consider his motion. I respectfully dissent.