JANUARY 25, 1996

No. A–616. ANDERSON, WARDEN *v.* BUELL. Application to
vacate the stay of execution of sentence of death entered by the
United States Court of Appeals for the Sixth Circuit, presented
to JUSTICE STEVENS, and by him referred to the Court, denied.

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE
KENNEDY, and JUSTICE THOMAS join, dissenting.

I respectfully dissent from the Court's refusal to vacate the
stay entered by the Court of Appeals for the Sixth Circuit.

On July 17, 1982, respondent abducted an 11-year-old girl while
she was collecting aluminum cans in a ballpark across the street
from her home. The Ohio Supreme Court's opinion affirming re-
spondent's conviction and death sentence describes what authori-
ties found six days later:

"[The victim] had been viciously sexually assaulted by the
thrusting of a rigid object against the inlet of her vagina and
then strangled to death. Her feet were bound with a large

piece of plastic and tape." *State* v. *Buell*, 22 Ohio St. 3d 124, 125, 489 N. E. 2d 795, 798 (1986).

We denied certiorari. 479 U. S. 871 (1986). Respondent commenced proceedings for postconviction relief in state court, and denial of this relief was made final by the Ohio Supreme Court in 1992. 62 Ohio St. 3d 1508, 583 N. E. 2d 1320, rehearing denied, 63 Ohio St. 3d 1418, 586 N. E. 2d 126.

More than six months later and just five days prior to his then-scheduled execution date, respondent filed a petition for a writ of habeas corpus in the United States District Court. Two days thereafter, on September 18, 1992, Judge Paul R. Matia *"reluctantly"* granted a stay even though he noted that "[c]ounsel for [respondent had] deliberately waited until literally hours before the execution to begin their federal court procedures." *Buell* v. *Tate*, No. 1:92CV1918 (ND Ohio, Sept. 18, 1992), p. 3.

Judge Matia subsequently granted respondent's motion to dismiss his federal habeas petition without prejudice so that respondent could bring a claim of ineffective assistance of counsel to the Ohio appellate courts. Denial of that claim was affirmed by the Ohio Supreme Court on November 17, 1993, 67 Ohio St. 3d 1500, 622 N. E. 2d 649, and this Court again denied review, 511 U. S. 1100 (1994). Rather than then proceed with a federal habeas claim, respondent elected to pursue a motion for delayed reinstatement of appeal, which was denied by the Ohio Supreme Court on September 28, 1994, 70 Ohio St. 3d 1211, 639 N. E. 2d 110, as was his subsequent motion for reconsideration in the Ohio Supreme Court on November 9, 1994, 71 Ohio St. 3d 1407, 641 N. E. 2d 204. We denied review on May 30, 1995. 515 U. S. 1105.

Respondent does not contest that he then did not commence any effort in the United States District Court until after the State, on October 27, 1995, scheduled his execution for January 25, 1996. Citing an "irreparable rift" with his counsel of eight years, respondent thereupon went to the District Court and on November 17, 1995, requested that Judge Matia appoint new counsel for the preparation and filing of a habeas petition. That request was granted on December 19, 1995. Such counsel on January 4, 1996, moved for a stay of execution pending final disposition of respondent's yet-to-be-filed habeas petition. On January 19, 1996, assuming that respondent had exhausted his state post-conviction remedies as of September 28, 1994—when the Ohio

Supreme Court denied his aforementioned motion—Judge Matia concluded that respondent had engaged in "inexcusable" and "dilatory behavior" by doing "nothing for more than one year" before returning to federal court. No. 1:95CV2415 (ND Ohio, Jan. 19, 1996), p. 1. Relying on our decision in *McFarland* v. *Scott,* 512 U. S. 849 (1994), Judge Matia refused to grant the stay request.

On respondent's motion, however, the Sixth Circuit granted a stay on January 23, 1996. Its only explanation was that "[a]fter careful consideration of the [parties' submissions], the motion for the stay of execution is granted until April 1, 1996, or until fifteen days after a petition for a writ of habeas corpus is filed in the district court, whichever first occurs." No. 96–3076 (CA6, filed Jan. 23, 1996), p. 1.

I would grant the State's motion to vacate this stay. The Sixth Circuit acted effectively without explanation and without any reference to the inequitable conduct described by the District Court. Respondent requested a stay not so that the District Court could consider a pending habeas petition, but so that new counsel could "properly investigate and present to the Court the proper grounds for habeas relief." No. 1:95CV2415 (ND Ohio, Jan. 4, 1996), p. 1. We noted in *McFarland, supra,* that 21 U. S. C. § 848(q)(4)(B) (1988 ed.) "grants indigent capital defendants a mandatory right to qualified legal counsel" in federal habeas proceedings. 512 U. S., at 854. We accordingly held that "once a capital defendant invokes his right to appointed counsel, a federal court . . . has jurisdiction under [28 U. S. C.] § 2251 to enter a stay of execution." *Id.,* at 858.

We made clear, however, that a capital habeas petitioner within the purview of § 848(q)(4)(B) had no automatic entitlement to such a stay:

> "Section 2251 does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court. Under ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution. But the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims. Where this opportunity is not afforded, '[a]pproving the execution of a defendant before his [petition] is decided on the merits would

clearly be improper.' On the other hand, if a dilatory capital defendant inexcusably ignores this opportunity and flouts the available processes, a federal court presumably would not abuse its discretion in denying a stay of execution." *Ibid.* (quoting *Barefoot* v. *Estelle,* 463 U. S. 880, 889 (1983)) (citation omitted).

This recognizes, as we have emphasized elsewhere, that a habeas petitioner requesting a stay of execution "seeks an equitable remedy" and that "[e]quity must take into consideration the State's strong interest in proceeding with its judgment and [a habeas petitioner's] obvious attempt at manipulation." *Gomez* v. *United States Dist. Court for the Northern Dist. of Cal.,* 503 U. S. 653, 654 (1992) *(per curiam).*

These principles must be brought to bear on this case. The State has, as noted, a strong interest in executing its duly acquired judgment, which was made final in 1986. Respondent's interest, on the other hand, is entirely indeterminate and for all we know nonexistent. He seeks additional time not in order to elaborate on a known claim, but in order to develop a claim, which may or may not be possible. If this is sufficient to outweigh the State's interest in proceeding with its judgment, executions could be stayed indefinitely. If that were not enough, as the District Court (which was familiar with respondent and his tactics) concluded, the face of the record plainly reveals evidence of inequitable conduct by respondent. He twice engaged in dilatory maneuvers—in 1992 by waiting "until literally hours before the execution to begin [his] federal court procedures" and, in the present proceeding, by waiting until the State had again set an execution date before returning to federal court to point to what he terms an "irreparable rift" with his counsel of eight years and to seek a stay under *McFarland, supra.* In these circumstances, it is my view that the Court of Appeals abused its discretion in bringing the State's orderly procedures once again to a halt.