Paul Everette **WOODWARD** Petitioner

v.

Christopher **EPPS,** Commissioner, Mississippi Department of Corrections, and Others Respondents

No. 2:03CV529DCBJCS.

United States District Court, S.D. Mississippi, Hattiesburg Division.

July 27, 2005.

day of the first plan year beginning on or after July 1, 2002, but in no event later than January 1, 2003.

C. Jackson Williams, Charles Jackson Williams, Attorney, Oxford, MS, Nathan Henry Elmore, Nathan H. Elmore, Attorney, Jackson, MS, for Paul Everette Woodward, Plaintiff.

Marvin L. White, Jr., Office of the Attorney General, Jackson, MS, for Christopher Epps Commissioner, Mississippi Department of Corrections, Jim Hood, Defendants.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This cause is before the Court on the petitioner's Application for Expert Funds [**docket entry no. 16**]. After reviewing the motion, responses, applicable statutory and case law, the Court finds as follows:

### FACTUAL AND PROCEDURAL HISTORY

This is a death penalty case which originated in the Circuit Court of Perry County, Mississippi, and is now before this Court on a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. The petitioner, Paul Everette Woodward, was convicted of capital murder and sentenced to death on September 20, 1995.[1] The Mississippi Supreme Court affirmed the death sentence, *Woodward v. State*, 726 So.2d 524 (Miss.1997), and on March 9, 1999, the United States Supreme Court denied *certiorari*. *Woodward v. Mississippi*, 526 U.S. 1041, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999). On March 6, 2003, the Mississippi Supreme Court denied the petitioner's post-conviction relief under state law. *Woodward v. State*, 843 So.2d 1 (Miss. 2003).

After submitting his habeas corpus petition, Woodward filed the present application for expert funds pursuant to 21 U.S.C.

---

1. The petitioner was sentenced to die on two separate occasions. His first death sentence was vacated by the Mississippi Supreme Court on October 7, 1993. *Woodward v. State*, 635 So.2d 805 (Miss.1993). He received his second death sentence on September 20, 1995.

Sections 848(q)(4) and (q)(9). Woodward contends that he needs assistance in hiring a psychiatrist to perform a psychiatric evaluation to determine whether he suffered from an organic brain dysfunction at the time of the capital crime. He argues that an evaluation is needed

> to determine whether a comprehensive forensic evaluation would have revealed statutory or non-statutory mitigating factors that would have been presented by defense counsel at the re-sentencing had the trial court granted Mr. Woodward's motion for psychiatric assistance, and to determine whether a causal connection exists between such mitigating facts and the crime for which he was convicted.

Ex Parte Application for Expert Funds at 1–2. It is Woodward's contention that the trial court's failure to appoint him a psychiatrist during his re-sentencing resulted in a violation of his due process rights pursuant to *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The state argues in response that Woodward was not entitled to further assistance from a psychiatrist at his re-sentencing since he was evaluated at the state hospital prior to trial, and since the trial judge provided him with the funds to retain his own psychologist. As a result, there was no *Ake* violation, and Woodward is not entitled to further assistance during his habeas corpus proceedings. This opinion will now address Woodward's application.

## DISCUSSION

Federal law provides assistance to indigent defendants during their habeas corpus proceedings. 21 U.S.C. § 848(q)(9) authorizes the following:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor....

■ The statute does not define "reasonably necessary." "However, established habeas corpus and death penalty precedent suggests that Congress intended to provide prisoners with 'all resources needed to discover, plead, develop, and present evidence determinative of their "colorable" constitutional claims.'" *Patrick v. Johnson*, 48 F.Supp.2d 645, 646 (S.D.Tex.1999) (quoting J. Liebman & R. Hertz *Federal Habeas Corpus Practice and Procedure* § 19.3 at 702 (3d ed.1998)). "The determination of a habeas claim often depends on the full development of factual issues, and experts play an important role in the fact-finding process." *Patrick*, 48 F.Supp.2d at 646 (citing *McFarland v. Scott*, 512 U.S. 849, 855, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994)). "It therefore follows that a petitioner must present the court with *specific* allegations which demonstrate that he is confined illegally and entitled to relief." *Id.* "Otherwise, the appointment of an expert is not 'reasonably necessary.'" *Id.* (citing *Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir.1993), *cert. denied* 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 556 (1994)).

Woodward contends that the appointment of a psychiatrist is "reasonably necessary" to assist him in proving that he was denied his constitutional right to receive expert assistance regarding his mental state at the time of the commission of the crime for which he was convicted. In *Ake v. Oklahoma*, the United States Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will con-

duct an appropriate examination. . . ." *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The *Ake* opinion, however, limited its holding by stating "[t]his is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Ake,* 470 U.S. at 83, 105 S.Ct. 1087. "Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and . . . we leave to the State the decision on how to implement this right." *Id.*

There is Fifth Circuit precedent on the issue of the required procedures for providing psychiatric assistance in compliance with *Ake.* In *Granviel v. Lynaugh,* an indigent defendant challenged the state of Texas' procedure of allowing a trial judge to appoint an expert to evaluate the defendant and provide a report to both the prosecution and the defense. *Granviel v. Lynaugh,* 881 F.2d 185, 191 (5th Cir.1989). The Fifth Circuit upheld Texas' procedure. In its ruling, the court stated the following:

> Granviel's ability to uncover the truth concerning his sanity is not prejudiced by a court-appointed, neutral expert. Availability of a neutral expert provides defendants with the "raw materials integral to the building of an effective defense." The state is not required to permit defendants to shop around for a favorable expert.

*Granviel,* 881 F.2d at 192 (internal citation omitted).

The Fourth Circuit Court of Appeals' case of *Wilson v. Greene* provides a persuasive analysis of the *Ake* requirements. In *Wilson,* the defendant, Kenneth Wilson filed a habeas corpus petition in which he contended that his court-appointed psychologist for his trial did not conduct an "appropriate" examination resulting in a violation of the *Ake* requirements. *Wilson v. Greene,* 155 F.3d 396, 400 (4th Cir.1998). In support of his contention, Wilson submitted to the district court a separate report from a different psychologist appointed by the district court to assist Wilson during his habeas proceedings. *Wilson,* 155 F.3d at 400. In said report, the psychologist contended that there was evidence to contradict the report submitted by Wilson's psychologist during the trial. Wilson argued in his habeas petition that the subsequent psychological evaluation proved that the testimony of his psychologist at trial was inadequate. *Id.* The Fourth Circuit disagreed with Wilson. The court reasoned that "[t]he Constitution does not entitle a criminal defendant to the effective assistance of an expert witness. To entertain such claims would immerse federal judges in an endless battle of the experts to determine whether a particular psychiatric examination was appropriate." *Id.* at 401 (citing *Harris v. Vasquez,* 949 F.2d 1497, 1518 (9th Cir. 1990); *Silagy v. Peters,* 905 F.2d 986, 1013 (7th Cir.1990)). The *Wilson* court stated:

> [t]his circuit consistently has "rejected the notion that there is either a procedural or constitutional rule of ineffective assistance of an expert witness, rather than ineffective assistance of counsel" . . . [i]t will nearly always be possible in cases involving the basic human emotions to find one expert witness who disagrees with another and to procure an affidavit to that effect from the second prospective witness. To inaugurate a constitutional or procedural rule of an ineffective expert witness in lieu of the constitutional standard of an ineffective attorney, we think, is going further than the federal procedural demands of a fair trial and the constitution require.

*Wilson,* 155 F.3d at 401 (quoting *Waye v. Murray,* 884 F.2d 765, 766–67 (4th Cir. 1989)). The Fourth Circuit also noted that in *Ake* the defendant had not received any

psychological evaluation. *Id.* The *Wilson* opinion concluded that "the decision in *Ake* reflects primarily a concern with ensuring a defendant access to a psychiatrist or psychologist, not with guaranteeing a particular substantive result." *Id.* The *Wilson* court determined that the defendant's claims of *Ake* violations were without merit.

Turning to the present case, Woodward seeks funds to retain the assistance of Dr. Timothy Summers, a licensed psychiatrist. Woodward contends that a "comprehensive forensic psychiatric examination is required to fully develop the material facts necessary for him to fairly litigate the claim pleaded in his habeas petition that, upon remand, the trial court denied him 'the right to effective assistance of counsel by denying him funds to hire an independent psychiatrist.'" Ex Parte Application for Expert Funds at 2. During trial, Woodward was examined by a psychologist at the state hospital who supplied both Woodward and the prosecution with a copy of his report. Woodward contends that the state hospital's evaluation was insufficient to provide his defense counsel with adequate information to challenge the state's expert.

The state argues in opposition that the state hospital's evaluation was sufficient to satisfy the *Ake* requirements since it assessed Woodward's competency to stand trial, and since it assessed whether Woodward could distinguish between right and wrong at the time of his crime. The state further asserts that even if the state hospital's examination was insufficient, the *Ake* requirements were satisfied since Woodward was also provided funds by the trial court to be examined by Dr. Clarence Thurman, a private clinical psychologist. Woodward counters by asserting that Thurman's examination was also insufficient. Woodward contends that Thurman did not have the capabilities of performing a thorough psychiatric examination. In his affidavit, Dr. Summers asserts that Dr. Thurman

> administered a thorough clinical assessment, including one test—the Memory for Designs test—that can signal organic brain damage, [but] given Mr. Woodward's history of head injuries, black outs, and memory loss, Mr Woodward required neuropsychological evaluation; Dr. Thurman failed to provide this. A competent and complete evaluation would have included a complete battery of neuropsychological tests, such as the Halstead–Raitan Neuropsychological Battery. A complete battery of tests such as these, as opposed to an incomprehensive smorgasbord of tests such as those administered, are required to adequately assess impairment in brain tissue damage.

Affidavit of Dr. Timothy Summers at ¶ 14 (attached to Ex Parte Application for Expert Funds at 2).

Woodward's application is not clear as to why the evaluations of the state hospital and Dr. Thurman did not comply with *Ake.* Woodward states that he is not contending that the trial level psychological evaluations should be analyzed for effectiveness under some rubric of the ineffective assistance counsel standard. Instead, Woodward simply contends that he is entitled to a more comprehensive examination by a psychiatrist.

■ Woodward's application is not well-taken. Woodward has not established that granting him the funds to retain Dr. Summers is "reasonably necessary" to pursue his habeas petition. Woodward is only entitled to funds pursuant to Section 848(q)(9) if he can demonstrate that the psychological assistance he received at trial did not meet the *Ake* standards. A review of Woodward's contention that he was not provided an adequate psychological evaluation at trial pursuant to *Ake* does

not reveal that his claim warrants the appropriation of funds. 21 U.S.C. § 848(q)(9) was not intended to allocate funds to habeas petitioners to conduct a fishing expedition for proof to support their claims. Dr. Summers' affidavit suggests that a more in-depth psychiatric analysis of Woodward might reveal that Woodward suffered from other brain conditions that influenced his behavior at the time of the crime. According to Dr. Summers, such results could have been beneficial in providing mitigating circumstances during Woodward's re-sentencing. Woodward, however, has not shown how the trial-level evaluations fell below the *Ake* standards. Without proof of such, Woodward's request for funds pursuant to Section 848(q)(9) is not "reasonably necessary."

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that the petitioner's Application for Expert Funds [**docket entry no. 16**] is not well-taken. Accordingly,

IT IS HEREBY ORDERED that Paul Woodward's Application for Expert Funds [**docket entry no. 16**] is **DENIED**.