Carl Stephen MOSELEY, Petitioner,

v.

Franklin FREEMAN, Secretary of Correction, Respondent.

No. 6:97–CV–00171.

United States District Court, M.D. North Carolina, Winston–Salem Division.

Feb. 28, 1997.

Paul Macallister Green, Durham, NC, Jonathan Broun, Center for Death Penalty Litigation, Durham, NC, for petitioner.

Valerie B. Spalding, N.C. Department of Justice, Raleigh, NC, for James B. French.

### ORDER

ELIASON, United States Magistrate Judge.

Carl Stephen Moseley, a prisoner of the State of North Carolina, has been sentenced

---

to death in two separate cases. He has filed a motion in this Court pursuant to 21 U.S.C. § 848(q)(4)(B) for the appointment of counsel to represent him to prepare his federal Section 2254 petitions for writs of habeas corpus for each state case.[1]

■ At one time there was a question over whether the federal court had authority to appoint counsel to challenge state court convictions prior to the filing of a federal habeas corpus petition pursuant to 18 U.S.C. § 2254. That has changed for death penalty cases such as the instant ones. Section 848(q)(4)(B) has been interpreted by the Supreme Court in *McFarland v. Scott*, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), as permitting the appointment of counsel in death penalty Section 2254 cases for the purposes of *preparing* a Section 2254 petition. However, this *preparation* does not include work to exhaust state court remedies prior to filing the federal petition. *In re Joiner*, 58 F.3d 143 (5th Cir.1995); *Weeks v. Jones*, 100 F.3d 124, 126 n. 7 (11th Cir.1996) (citing *In re Lindsey*, 875 F.2d 1502 (11th Cir.1989) (Section 848(q)(4)(B) does not require federal financing to exhaust state post-conviction claims)).

The qualified petitioner initiates a "post-conviction proceeding" within the meaning of Section 848(q)(4)(B) by requesting appointment of counsel to prepare and file the Section 2254 petition. *McFarland v. Scott*, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666. The federal court should then appoint counsel and set the date for the filing of the petition.

The statutory procedure of Section 848(q)(4)(B) pre-supposes that the petitioner has a present right to file a Section 2254 post-conviction proceeding. This normally occurs when state post-conviction proceedings have been exhausted. *See Sterling v. Scott*, 57 F.3d 451 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 715, 133 L.Ed.2d 669 (1996) (petitioner failed to exhaust his state court remedies and lost his right to federally supplied counsel until he cured the defects and was in a position to file a new Section 2254 petition). However, in extraordinary circumstances, the appointment may be made even if state post-conviction proceedings have not been completed. *McFarland v. Scott*, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (stay of execution). The exceptional circumstances must be set out in the application. *See Death Row Prisoners of Pennsylvania v. Ridge*, 948 F.Supp. 1278 (E.D.Pa.1996). Following this reasoning to its ultimate conclusion, this Court interprets Section 848(q)(4)(B) to require that, absent extraordinary circumstances, a petitioner must complete both his first direct appeal and post-conviction proceedings in order to be in a position to request court appointed counsel to file a Section 2254 petition.

In the instant case, petitioner has exhausted his post-conviction remedies in state court as to one of the convictions, but not to the other. Petitioner was convicted in the Stokes County Superior Court in 1993 of first-degree murder, first-degree rape and first-degree sexual assault and received a sentence of death and two consecutive life terms. (*State v. Moseley*, Nos. 91–CRS–5325, –5326, & –5327) He has completed both his direct appeal and state post-conviction proceedings in state court because the North Carolina Supreme Court denied a petition for a writ of certiorari with respect to the motion for appropriate relief on October 10, 1996. Petitioner's second death sentence for murder was received from the Superior Court in Forsyth County in 1992. (*State v. Moseley*, No. 91–CRS–32338) He has completed his direct appeal. His post-conviction proceedings in state court are not final, however,

---

1. 21 U.S.C. § 848(q)(4)(B) provides for the appointment of counsel to represent defendants charged with or convicted of a capital crime. Section 848(q)(4)(B) covers appointment of counsel for both state and federal post-conviction proceedings. It states:

In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9).

21 U.S.C. § 848(q)(4)(B).

because he must file a petition for a writ of certiorari in the North Carolina Supreme Court. Thus, petitioner has not exhausted his state post-conviction proceedings as to the Forsyth County case.[2]

Petitioner's application clearly shows that his state post-conviction proceedings, with respect to the Forsyth County conviction, have not been completed. The Stokes County post-conviction proceeding is final except that petitioner states that he intends to file a timely petition for certiorari to the United States Supreme Court as to both state post-conviction proceedings.

■ The first question before the Court is whether actual or potential Supreme Court certiorari review of state post-conviction proceedings should be counted as part of the time during which the state post-conviction proceeding is pending for purposes of the appointment of counsel provision in 21 U.S.C. § 848(q)(4)(B). The Court has not found any case directly on point, but for the following prudential reasons determines that the purposes of 21 U.S.C. § 848(q)(4)(B) would be best served by not recognizing and including such time period.

First, a petitioner need not procure certiorari review by the United States Supreme Court in order to satisfy the exhaustion requirement or to confer jurisdiction on a federal court to entertain a Section 2254 petition. *Fay v. Noia,* 372 U.S. 391, 435–38, 83 S.Ct. 822, 847–49, 9 L.Ed.2d 837 (1963) (certiorari); *County Court of Ulster County, N.Y. v. Allen,* 442 U.S. 140, 149 n. 7, 99 S.Ct. 2213, 2220 n. 7, 60 L.Ed.2d 777 (1979) (*Noia* applied to direct appeal). The Supreme

Court is not part of a state court, nor is review by it part of a state proceeding. *Fay v. Noia,* 372 U.S. at 436, 83 S.Ct. at 847–48.

The decision in *Fay v. Noia, supra,* overturned existing precedent,[3] but was largely prudential. First, it found that Supreme Court review of state court decisions had by then changed from a normal appellate review process to a discretionary one, where the record was not always fully developed when presented to the Supreme Court. Second, requiring the filing of a certiorari petition in each case had flooded the Supreme Court with petitions, most of which had no merit. Therefore, rather than screening out frivolous cases prior to the filing of Section 2254 petitions in federal district court, the prior rule merely added more work for the Supreme Court. The Supreme Court found that the cost in judicial resources (to the Supreme Court) in requiring that state defendants seek certiorari review prior to filing a Section 2254 petition in federal court far outweighed any benefit in preserving comity between state and federal courts.[4]

While Supreme Court review of state court decisions is not a prerequisite to filing a Section 2254 petition, nothing in the decision of *Fay v. Noia* would seem to preclude federal courts from recognizing the potential or pendency of such certiorari review as being a part of the exhaustion of remedies process for purposes of 21 U.S.C. § 848(q)(4)(B). Such a situation would arise if the result furthered the conservation of judicial resources without violating other important concerns. The instant death penalty cases could be such a situation.

---

2. As to the Forsyth County case, petitioner requests that the Court make a provisional appointment that would become effective on the date the North Carolina Supreme Court denies the pending petition for certiorari. However, petitioner nowhere shows that this is an authorized procedure under the statute. Moreover, a conditional appointment could result in problems if, for example, the state court took a long time to review the matter and the situation of the attorneys who were appointed changed. The Court declines the request.

3. *Fay v. Noia,* 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963), overruled the "holding in *Darr v. Burford, supra* [339 U.S. 200, 70

S.Ct. 587, 94 L.Ed. 761 (1950)], that a state prisoner must ordinarily seek certiorari in this Court as a precondition of applying for federal habeas corpus."

4. One must question the wisdom, in any event, of a policy which uses the much scarcer resources of the Supreme Court to lighten the burdens of the more numerous district and appellate federal courts. Supreme Court review was and is available in any event through a petition for certiorari after the lower federal courts have ruled on the Section 2254 petition. The old policy, in fact, could have a negative impact on comity by diverting the Supreme Court's attention from issues relating to national policy.

In death penalty cases, defendants almost always utilize all of the judicial processes available to them. Furthermore, they are not normally interested in speedy review. Delays and stays of execution for purposes of review better serve their purpose of avoiding service of their sentence. For these reasons, death penalty defendants have an interest in filing for certiorari review, and do so. Therefore, in spite of *Fay v. Noia,* in death penalty cases, the Supreme Court may be burdened with certiorari petitions. Consequently, in order to avoid two federal courts working on the same state conviction at the same time, and for purposes of appointment of counsel under Section 848(q)(4)(B), it might be better to deem a state prisoner as not ready to pursue a federal habeas corpus petition while United States Supreme Court certiorari review of state post-conviction proceedings is still available or pending. Counsel would be appointed when petitioner disclaims certiorari review (1) explicitly (in the Section 848 application), (2) implicitly (through the passage of time), or (3) files a certiorari petition and obtains a decision.[5]

Despite the likely merits of such a construction, recent Congressional amendments and additions to habeas corpus statutes in the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), Pub.L. No. 104–132, tit. 1, April 24, 1996, renders such an interpretation impractical. In order to expedite the processing of death penalty cases, the AEDPA sets abbreviated limitations periods for bringing and processing the actions in federal court. In this atmosphere, there is no implicit, much less explicit, evidence that Congress intended that federal courts consider United States Supreme Court certiorari review of state post-conviction proceedings to be part of the cognizable time period for filing or processing Section 2254 actions. The changes wrought by the AEDPA will affect this Court's construction of Section 848(q)(4)(B) and the process by which death penalty petitioners apply to the Court for counsel.[6]

The AEDPA establishes three avenues for the review of state death penalty cases by the federal courts. The first division includes those cases which come under the standard review provisions of Chapter 153, 28 U.S.C. §§ 2241–2255. This category of cases is reviewed in essentially the manner as before except for the AEDPA modifications providing a more deferential review standard, a more stringent limitation on successive petitions, and a one-year limitation period. These changes apply to all habeas corpus cases and not just death penalty cases. *Bennett v. Angelone,* 92 F.3d 1336, 1341–43 (4th Cir.1996). Section 107 of the AEDPA added Chapter 154, 28 U.S.C. §§ 2261–2266, establishing a new opt-in provision for the expedited filing and processing of death penalty habeas corpus petitions. *Id.* There are two opt-in procedures. *Hill v. Butterworth,* 941 F.Supp. 1129, 1135 (N.D.Fla.1996). The difference between them is that one is a special "unitary review" wherein direct appeal and post-conviction proceedings are collapsed into one. *Id.* For both procedures, each state must provide competent counsel and reasonable funding at all levels. Opt-in status is determined by reference to 28 U.S.C. § 2261 which governs appointment of counsel. Subsection (a) provides that the new AED-

---

**5.** This hypothetical construction of Section 848(q)(4)(B) uses the existing rule governing retroactive application of United States Supreme Court decisions to state court criminal convictions. Under one of the *Teague* tests, a state court criminal conviction becomes final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari [to the United States Supreme Court] has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994); *see Linkletter v. Walker,* 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965) (extension of Fourth Amendment exclusionary rule of *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) to the states).

**6.** The two statutes, 18 U.S.C. § 848(q)(4)(B) and Chapter 153—Habeas Corpus of Title 28 U.S.C. §§ 2241–2255, should, where possible, be read *in pari materia. See McFarland v. Scott,* 512 U.S. 849, 858, 114 S.Ct. 2568, 2573, 129 L.Ed.2d 666 (1994) (18 U.S.C. § 848(q)(4)(B) and 28 U.S.C. § 2251). The reasoning applies with even greater force to the AEDPA, especially Section 107 which created Chapter 154, 28 U.S.C. §§ 2261–2266, establishing new procedures for the expedited processing of death penalty cases.

PA amendments only apply if the provisions of subsections (b) and (c) are satisfied. Subsection (b) [7] requires a state to establish a procedure for appointment, compensation, and payment of expenses of counsel in state post-conviction proceedings, including the provision of standards of competency. Subsection (c) [8] requires that counsel must be offered to indigents unless, after a hearing, a prisoner rejects the offer of counsel.[9] Subsection (d) requires that counsel who are appointed have not previously represented the petitioner at trial or on direct appeal, unless the prisoner and counsel expressly request continued representation. In addition, if the provisions of Section 2261 are met, then a defendant may obtain a stay of the order of execution as provided in Section 2262.

Cases which fall within the opt-in provision give a defendant less time for filing a Section 2254 petition than otherwise would be the case. Section 2263 provides for a 180–day period, whereas Section 2244(d) provides for a 1–year limitation. Moreover, opt-in cases are subject to limitation periods for ruling on and deciding the motions. Under Section 2266, a district court must ensure that all briefings and hearings are held within 120 days and must rule on the case not later than 180 days after the filing of the application.

The AEDPA circumscribes the time for appellate court ruling and gives greater finality to state court resolution of issues. *Bennett v. Angelone*, 92 F.3d at 1342.

The AEDPA affects two major areas in regard to construing and applying 21 U.S.C. § 848(q)(4)(B). The first concerns the application procedure. Section 848 is silent as to this. However, the advent of the AEDPA now makes it necessary for the court to have certain information as soon as possible.

First, it is extremely important for the federal habeas court to know whether the state contends the case should be subject to the AEDPA opt-in provision. If the case is subject to the opt-in procedures, the court must circumscribe the time for filing and briefing any petition, as well as closely regulating the stay of execution. Consequently, the state must immediately become a party so the court may know whether the state (1) contends it has complied with Section 2261 with respect to appointment of counsel, and (2) requests the opt-in procedures be used in the particular case. This information may continue to be important even after the federal courts agree that state procedures satisfy the institutional requirements of Section 2261. In every case, a state court must enter an order not only appointing counsel, but make a finding that an offer is accepted

**7.** 28 U.S.C. § 2261(b) provides as follows:

(b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

**8.** 28 U.S.C. § 2261(c) provides as follows:

(c) Any mechanism for the appointment, compensation, and reimbursement of counsel as provided in subsection (b) must offer counsel to all State prisoners under capital sentence and must provide for the entry of an order by a court of record—

(1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or

is unable competently to decide whether to accept or reject the offer;

(2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or

(3) denying the appointment of counsel upon a finding that the prisoner is not indigent.

**9.** The courts interpreting 28 U.S.C. § 2261 have found that Congress had the intention of establishing a *quid pro quo* arrangement whereby states can obtain expedited processing of death penalty cases by creating and funding qualified representation programs. The programs must provide for automatic appointment of counsel, a comprehensive compensation mechanism, explicit standards of competency including experience in the relevant areas of law, and the entry of a court order setting out the outcome of the counsel appointment proceeding. *Mata v. Johnson*, 99 F.3d 1261, 1265–67 (5th Cir.1996); *Wright v. Angelone*, 944 F.Supp. 460 (E.D.Va. 1996); *Hill v. Butterworth*, 941 F.Supp. 1129, 1141 (N.D.Fla.1996).

and that both petitioner and counsel have expressly requested the continued representation of trial and/or direct appeal counsel, if such occurs. (28 U.S.C. § 2261(c)(1) & (d)) Controversies may arise in these areas in individual cases even where the state counsel appointment procedure satisfies Section 2261.

Moreover, it is possible that, in a particular case, the state attorney general may not wish to proceed under the opt-in provisions because of time concerns. For example, Section 2266 requires that briefing *and hearings* be concluded in 120 days. The need for a hearing cannot often be determined until there has been briefing. Therefore, the court must always reserve a part of the 120 days for a possible hearing on very short notice to the parties. It is possible if a hearing were needed that a state would consider it more important to give adequate attention to the hearing than to have expedited review.

■ Consequently, a death penalty petitioner seeking appointed counsel pursuant to 21 U.S.C. § 848(q)(4)(B) must file a motion in the district court and serve the same on the appropriate state authorities. The application must additionally set out (1) whether the case qualifies under Section 2261 as an opt-in case and if not, why not; (2) if an opt-in case, whether petitioner seeks a stay of execution pursuant to Section 2262; and (3) whether the application is made within the time requirements of Section 2244(d) or Section 2263. The state must promptly respond to the application so that the court may enter an expedited briefing and hearing schedule for these matters if necessary.

In the instant case, petitioner understandably did not file such an application or serve it. However, in this instance, the Court will deem the application adequate and direct that the Clerk of this Court send the application to the North Carolina State Attorney General, along with a copy of this Order, which directs that a response be filed within ten days of filing, answering the above inquiries.

A second area of Section 848(q)(4)(B) affected by the AEDPA is the matter of whether petitioner is in a position to file a Section 2254 petition—a matter discussed previously.

It is clear that the petitioner has not fully exhausted his state court remedies with respect to the Forsyth County conviction. However, for the following reasons, the Court concludes that petitioner has exhausted his state court remedies with respect to the Stokes County conviction and that he is in a position to file a Section 2254 petition, whether or not he files a writ of certiorari with the United States Supreme Court.

The first and foremost reason for this construction is the fact that now all habeas corpus cases, opt-in or not, are subject to a limitation period. Section 2244(d) sets a one-year time period. Under subsection (d)(2), it is provided: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Likewise, in Section 2263 for opt-in cases, a 180–day limitation period is established with the following tolling requirements:

(b) The time requirements established by subsection (a) shall be tolled—

(1) from the date that a petition for certiorari is filed in the Supreme Court until the date of final disposition of the petition if a State prisoner files the petition to secure review by the Supreme Court of the affirmance of a capital sentence on direct review by the court of last resort of the State or other final State court decision on direct review;

(2) from the date on which the first petition for post-conviction review or other collateral relief is filed until the final State court disposition of such petition; and

(3) during an additional period not to exceed 30 days, . . . .

In neither of these tolling provisions is any allowance made for the filing of certiorari review in the United States Supreme Court after state post-conviction proceedings. And, *Fay v. Noia, supra,* establishes that such certiorari review is not part of the state proceeding. Consequently, if counsel were not appointed until after the certiorari issue were resolved, a defendant could lose his claim because of the running of the limitation

period. Conservation of judicial resources cannot justify such a result. Consequently, the Court finds that the Stokes County claim is ripe for the appointment of counsel and the Court will appoint counsel as requested in the application.

Before entering the order granting petitioner's motion, the Court will deal with several procedural matters. First, the Court agrees that because the evidence with respect to both convictions appears to have some overlap, it would be better in terms of cost and adequacy of representation for the same attorneys to represent petitioner in the two separate Section 2254 petitions which apparently will be filed with respect to each state court conviction. However, this matter must be addressed when the Forsyth County conviction is ready to come before this Court. *See* n. 2, *supra.*

Second, amendments to 28 U.S.C. § 1915 require prisoners who proceed *in forma pauperis* ("IFP") to make payment for filing fees as their resources permit. Because petitioner likely has sufficient resources to eventually pay the $5.00 filing fee, he may wish to simply pay the entire amount when applying to proceed IFP on filing his Section 2254 petition. A review of the pauper's application reveals that petitioner qualifies as an indigent for appointment of counsel pursuant to 21 U.S.C. § 848(q)(4)(B).

**IT IS THEREFORE ORDERED** that petitioner's motion for appointment of counsel to represent him in the preparation and filing of Section 2254 petitions for writs of habeas corpus with respect to his conviction in Stokes County Superior Court (*State v. Moseley*, Nos. 91–CRS–5325, –5326 & –5327), is granted, but is denied without prejudice as to his conviction in Forsyth County for first-degree murder (*State v. Moseley*, 91–CRS–32338). A copy of this order shall be served on the North Carolina Attorney General.

**IT IS FURTHER ORDERED** that within ten days of the filing of this Order, the North Carolina Attorney General shall state to what extent the Stokes County case comes within the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amendments, in particular, 28 U.S.C. § 2261.

**IT IS FURTHER ORDERED** that Paul M. Green, Jonathan Broun and the Center for Death Penalty Litigation are hereby appointed to represent the petitioner, Carl Stephen Moseley, in the preparation and presentation of petitions for the Stokes County conviction. Counsel shall file the petition and a brief within thirty (30) days from the entry of this Order. The State shall file a response within thirty (30) days thereafter.

**IT IS FURTHER ORDERED** that if both parties agree that this is not an opt-in AEDPA case, 28 U.S.C. § 2261, the Court will entertain a new briefing schedule upon motion of the parties after joint consultation.

**IT IS FURTHER ORDERED** that Local Rule 202(e) briefing limitations are expanded as follows: Initial and Response Briefs are limited to sixty (60) pages and the Reply Brief to fifteen (15) pages.

**IT IS FURTHER ORDERED** that the Clerk of this Court send two copies of the Court's current *in forma pauperis* application to each of the attorneys who submitted this motion.