Jose Angel SAGUILAR, Petitioner,

v.

Sidney D. HARKLEROAD, Administrator of Marion Correctional Inst. and Theodis Beck, Secretary of the North Carolina Department of Correction, Respondents.

No. 1:03CV01008.

United States District Court, M.D. North Carolina.

Dec. 14, 2004.

Susan H. Pollitt, Raleigh, NC, for Petitioner.

Clarence Joe Delforge, III, N.C. Department of Justice, Raleigh, NC, for Respondent.

## ORDER

OSTEEN, District Judge.

On September 16, 2004, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. Petitioner filed objections to the Recommendation within the time limit prescribed by Section 636.

The Court has reviewed petitioner's objections *de novo* and finds they do not change the substance of the United States Magistrate Judge's rulings which are affirmed and adopted.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (docket no. 5) is granted, that respondents' motion for summary judgment (docket no. 7) is denied for being moot, that the petition is denied (docket no. 1), that this action is dismissed, and that finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability is denied.

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

ELIASON, United States Magistrate Judge.

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. On June 30, 1999, petitioner was convicted in the Superior Court of Forsyth County of seven counts of trafficking in cocaine and two counts of conspiracy to traffic in cocaine in cases 98 CRS 52399 –411. He was subsequently sentenced to nine consecutive sentences of 35 to 42 months of imprisonment. He appealed his convictions, but the North Carolina Court of Appeals, in an opinion issued on August 1, 2000, found no error in his trial or sentences. Petitioner did not seek discretionary review from the North Carolina Supreme Court. However, over a year later, in September 2001, petitioner filed a petition for a writ of certiorari with the North Carolina Supreme Court. This was denied on January 31, 2002 by an order, and certified to the North Carolina Court of Appeals on February 4, 2002.

Following his direct appeal and his attempt at a grant of certiorari from the North Carolina Supreme Court, petitioner began to seek collateral review of his convictions and sentences. He did so by filing a motion for appropriate relief in Forsyth County on November 7, 2002. When this was denied, he unsuccessfully sought certiorari from the North Carolina Court of Appeals which denied the request on September 17, 2003. Shortly thereafter, petitioner submitted his habeas petition to this Court.

Respondents request dismissal on the ground that the petition was filed outside of the one-year limitation period imposed by the Antiterrorism and Effective Death Penalty Act of 1996, P.L. 104–132 ("AEDPA"). 28 U.S.C. § 2244(d)(1).[1] The AEDPA amendments apply to all Section 2254 petitions filed after its effective date of April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

■ The limitation period starts running on the date when the judgment of conviction becomes final at the end of direct review. *Harris v. Hutchinson,* 209 F.3d 325 (4th Cir.2000). However, it is tolled while state post-conviction proceedings are pending. *Harris, supra.* The suspension is for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999), *cert. denied,* 528 U.S. 1197, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000). However, the tolling does not include the time to file a certiorari petition to the United States Supreme Court from denial of state post-conviction relief. *Ott v. Johnson,* 192 F.3d 510, 513 (5th Cir.1999), *cert. denied,* 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000).

The central issue in this case centers on the question of when petitioner's convictions became final for purposes of AEDPA. The applicable portion of the statute itself states that the one-year limitation period shall begin to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). Although the language of the statute seems clear enough on its face, the parties have differing views as to when direct review of petitioner's convictions ended.

---

**1.** In addition to making their motion to dismiss based on AEDPA's time bar, respondents also made an alternative motion for summary judgment addressing the petition on its merits. Because of the Court's decision that the petition is time barred, consideration of the motion for summary judgment is not necessary and the motion is moot.

Respondents assert that North Carolina's direct review process begins with an appeal from the trial court to the North Carolina Court of Appeals. Once a decision is rendered, a mandate issues and the parties then have 15 days to file a notice of appeal with the North Carolina Supreme Court where there is an appeal of right and/or a petition for discretionary review for issues where there is not an appeal of right. *See* N.C. R.App. P. 14(a) & 15(b). The mandate shall issue twenty days after the opinion is filed, unless otherwise ordered. N.C. R.App. P. 32(b). Respondents argue that if a notice of appeal or a petition is not filed within 35 days of a decision by the North Carolina Court of Appeals, direct review ends and the conviction becomes final. *See Clay v. United States,* 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (for federal cases, finality occurs when the time for noticing review expires).

Using this method of calculating finality, petitioner's convictions became final on September 5, 2000. The limitation period would have begun to run on that day and would have expired one year later without petitioner having filed anything further. His next filing was a petition for certiorari filed with the North Carolina Supreme

Court in September 2001. As will be seen, this necessarily would have to be a petition filed pursuant to N.C. R.App. P. 21.[2]

To a point, petitioner agrees with respondents' description of the direct review process in North Carolina. However, petitioner believes that additional steps, specifically a review by the North Carolina Supreme Court and at least the option for review by the United States Supreme Court, must be completed to create finality.

North Carolina Rule of Appellate Procedure 21(a)(2) allows a party to file a petition for certiorari seeking review of the Court of Appeals' decision when the party has lost his "right to prosecute an appeal of right or to petition for discretionary review by failure to take timely action." According to petitioner, his convictions could not become final until he had filed such a petition with the North Carolina Supreme Court, and if his petition for certiorari were denied (as it was), he then had 90 more days to file a petition for certiorari with the United States Supreme Court. If this is the case, plaintiff's convictions did not become final, and the one-year limitation period did not begin to run until May 6, 2003. His petition to this Court would be timely under this scenario.

---

**2.** Respondents state that petitioner filed his petition for certiorari on September 5, 2001, tolling his one year period of limitation with one day left. They then assume that the period remained tolled while the certiorari petition was pending and for another 90 days after it was denied in order to allow petitioner to seek a writ of certiorari from the United States Supreme Court. Respondents believe that the one year period then expired a day later without petitioner seeking relief in this Court or making another filing which would toll the limitation period. While the Court agrees with respondent that petitioner's action is barred, it rejects the proffered counting.

There are two points worth noting based on this line of argument. First, the record shows

the petition for certiorari was served by mail on September 4, 2001, and received on September 14, 2001. Thus, the one-year limitation period may well have already expired. Second, and more importantly, as will be discussed next, the filing of a petition for certiorari cannot toll the limitation period because it is untimely under N.C. R.App. P. 14 or 15, and if the petition were pursuant to N.C. R.App. P. 21, it constitutes a request for an extraordinary writ. A request for an "extraordinary writ," which is not part of the regular review process, does not toll the AEDPA limitation period. *See Carey v. Saffold,* 536 U.S. 214, 223–225, 122 S.Ct. 2134, 2140–41, 153 L.Ed.2d 260 (2002).

The only real disagreement between the parties is whether a N.C. R.App. P. 21 petition for certiorari to the North Carolina Supreme Court, for the purposes of seeking an out-of-time review of a decision made by the North Carolina Court of Appeals on direct review, constitutes a part of the direct review process in North Carolina. For several reasons, the Court concludes that it does not.

The first basis for rejecting petitioner's argument is the very language of N.C. R.App. P. 21 which allows the writ of certiorari to be issued. That Rule is in a section entitled "Extraordinary Writs." *See* n. 1. This title alone suggests that writs of certiorari are something apart from the normal direct review process. However, even more convincing is the language of the Rule itself which states that writs of certiorari may be issued to allow review of a lower court's decision when "the right to prosecute an appeal of right or to petition for discretionary review has been lost by failure to take timely action; or for review of orders of the Court of Appeals when no right of appeal exists." N.C. R.App. P. 21(a)(2). This language again suggests that the petition for certiorari is outside of the direct review process because it is used only when an appeal process does not exist or has ended. Were the N.C. R.App. P. 21 petition for certiorari a form of direct review, then the right to appeal would exist at that point in time or else would not have been lost. In either case, N.C. R.App. P. 21 would not be applicable by its own terms.

There is also some case law support for respondents' view that a writ of certiorari under N.C. R.App. P. 21 does not constitute a part of the direct review process. *See State v. Niccum*, 293 N.C. 276, 238 S.E.2d 141 (1977) (petition for certiorari may be used when no right to an appeal exists); *Little v. City of Locust*, 83 N.C.App. 224, 349 S.E.2d 627 (1986), *rev. denied*, 319 N.C. 105, 353 S.E.2d 111 (1987) (certiorari, which has the effect of an appeal by allowing review, was devised as a substitute for appeal). These and similar cases suggest that a petition for certiorari is separate from the direct review process, and is in the nature of an extraordinary writ. *See* n. 1.

Finally, the State's interest in having an end point requires that N.C. R.App. P. 21 petitions for certiorari not be considered as part of the direct review process in North Carolina. A person convicted of a crime has a short period of time after a judgment is entered to file a notice of appeal and to perfect that appeal with the North Carolina Court of Appeals. Following an unsuccessful appeal, as discussed above, he has 35 days to file an appeal or petition for discretionary review with the North Carolina Supreme Court. N.C. R.App. P. 14 and 15. Then, if still unsuccessful, he has another 90 days to seek certiorari from the United States Supreme Court. *Moseley v. Freeman*, 977 F.Supp. 733, 736 n. 5 (M.D.N.C.1997). This process ensures that an appeal does not drag out in an undue manner, but instead concludes fairly rapidly, thereby securing the finality of the conviction.

On the other hand, N.C. R.App. P. 21(a), which allows for petitions for certiorari, imposes no specific time limit for seeking a writ. Instead, it must only be done "without unreasonable delay." N.C. R.App. P. 21(c). If petitions for certiorari were to be construed as part of the direct review process for the purposes of determining AEDPA finality, prisoners who were not diligent, who never pursued a timely appeal, or who never pursued any appeal, could at any time undermine the finality of their conviction, years after any possible right to an appeal had expired, simply by filing a petition for certiorari. Even prisoners

who never had a right to direct review could suddenly create one for purposes of AEDPA finality by filing a certiorari petition. Moreover, being in the nature of an extraordinary writ, there appears to be no limit on the filing of successive petitions for certiorari. The consequence would be that persons, such as petitioner, who have already filed a petition for certiorari, would not have a truly final conviction because they could always file another petition seeking another round of review. In short, allowing petitioner's interpretation to prevail could essentially wipe out the concepts of finality both for North Carolina criminal law and for AEDPA purposes with its one-year limitation period because direct review would never truly end. This would be an unreasonable interpretation of North Carolina law and AEDPA because it would counter the interest in having convictions become final in a certain and timely manner.

■ Petitioner next argues that petitions for certiorari are a part of the direct review process because one round of review by all levels of available state courts is necessary in order for there to be exhaustion of state court remedies so that a federal court may entertain a habeas corpus petition pursuant to 28 U.S.C. § 2254.[3] He fails to cite any authority for this proposition and fails to take into account that one may waive his or her rights by inaction. Exhaustion and finality are separate concepts. It does not necessarily follow that a petitioner's conviction is not final because he has not exhausted his state remedies. In fact, the language of AEDPA expresses the contrary conclusion. It states that the period of limitation begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This specifically allows convictions to be final when options for direct review were not utilized.

Petitioner next cites to federal cases interpreting AEDPA that hold that petitions for certiorari pursuant to N.C. R.App. P. 21(e), in order to review collateral attacks on convictions made by motions for appropriate relief, toll the running of the period of limitations. *See, e.g., Taylor, supra.* And in North Carolina, this is true even though the tolling period may arguably be extended for an indefinite period of time due to the requirement that petitions for certiorari need only be filed within a reasonable time. *Allen v. Mitchell,* 276 F.3d 183 (4th Cir.2001). Petitioner argues by extrapolation that in North Carolina, that means petitions for certiorari pursuant to N.C. R.App. P. 21(a) should be considered part of the review process for direct appeals as well.

The Court rejects this argument for several reasons. First, in the cases cited above, the federal courts merely assumed that a N.C. R.App. P. 21(e) writ for certiorari was a part of the "normal" direct review process for post-conviction matters, as opposed to signifying that there was no direct review of post-conviction rulings in North Carolina except by an extraordinary writ. There is no indication in the Rule that North Carolina provides review of post-conviction decisions as a matter of right. *Contrast O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 1733, 144

---

**3.** The principle of exhaustion exists in order to give the State an opportunity to review the matter and correct any mistakes before a federal court entertains the matter. Its purpose is one of comity, *i.e.,* to attempt to lessen the friction which could arise when the federal government oversees the actions of state government. *Carey,* 536 U.S. at 221, 122 S.Ct. 2134.

L.Ed.2d 1 (1999). That issue does not appear to have been argued.

Second, in North Carolina, a petition for certiorari, with its lack of a strict time limit, is the only way North Carolina has provided for a prisoner to seek review of a lower court's ruling on a post-conviction motion. For this reason, federal courts assumed it to be a part of the direct review process of a *post-conviction* motion. *Taylor*, 186 F.3d 557. On the other hand, North Carolina has a separate, expressly defined, and time-limited direct review process for the conviction. Therefore, there is no reason to apply the assumption made by the *Taylor* court to initial appeals of criminal convictions.

For all of the reasons discussed above, the Court concludes that N.C. R.App. P. 21(a) petitions for certiorari in North Carolina are not a part of the direct review process referred to in AEDPA, nor are they to be used to determine the finality of convictions and the beginning of the one-year limitations period or the tolling of the limitation period pursuant to 28 U.S.C. § 2244(d)(1).[4] This means that petitioner's convictions became final on September 5, 2000. The filing of the petition for certiorari in September 2001 did not toll the limitation period, which expired on September 5, 2001.[5] *Hernandez v. Caldwell*, 225 F.3d 435 (4th Cir.2000)(counting is done pursuant to Fed.R.Civ.P. 6(a)).

■ Petitioner makes one final argument in favor of having his petition heard by this Court despite missing the AEDPA time limit. He asserts that he is actually innocent of one of the charges against him and contends that this actual innocence allows the Court to consider his claims even if they are time barred. Unfortunately for petitioner, he cites no case law showing that there is an "actual innocence" exception to AEDPA's time limits. The Fourth Circuit has specifically rejected such a contention, stating,

> we see no reason why the decision as to whether a court considers the claims in an untimely petition should depend on the nature of the claims in the petition. Allowing consideration of the merits of time-barred claims to creep into the equitable tolling analysis lets petitioners effectively circumvent the statute of limitations because the merits of their claims will always be considered. This would enable petitioners who were in no way prevented from complying with the statute of limitations to create delay and undermine finality—two of the reasons that precipitated enactment of the AEDPA statute of limitations.

*Rouse v. Lee*, 339 F.3d 238, 251 (4th Cir. 2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 1605, 158 L.Ed.2d 248 (2004). Moreover, actual innocence is a matter which a petitioner would naturally raise in the first instance. And, if the facts supporting the claim did not become known until a later date, AEDPA specifically takes such an event into account and provides an oppor-

---

4. Review of post-conviction petitions pursuant to N.C. R.App. P. 21(e) is an apparent exception. *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir.1999), *cert. denied*, 528 U.S. 1197, 120 S.Ct. 1262, 146 L.Ed.2d 117 (2000).

5. The fact that petitioner later pursued post-conviction relief does not somehow revive the expired time limit. *Minter v. Beck*, 230 F.3d 663 (4th Cir.2000). Further, because petitioner did not seek review in the North Carolina Supreme Court, he may not be entitled

to a 90–day tolling period for filing a petition for certiorari with the United States Supreme Court. Supreme Court Rule 13.1 allows a petition for certiorari from a "judgment in a criminal case of a state court of last resort." Because petitioner elected not to seek review by the North Carolina Supreme Court, it would appear that he waived any right to certiorari review by the United States Supreme Court.

tunity for review. 28 U.S.C. § 2244(2)(B). Therefore, the Court will not accept petitioner's invitation to evaluate the merits of his time-barred petition and respondents' motion to dismiss should be granted.

**IT IS THEREFORE RECOMMENDED** that respondents' motion to dismiss (docket no. 5) be granted, that respondents' motion for summary judgment (docket no. 7) be denied for being moot, that the petition be denied (docket no. 1), and that Judgment be issued dismissing this action.

September 16, 2004.