Gary HEIDNIK, Petitioner,

v.

Martin HORN, Commissioner, Pennsylvania Department of Corrections; Gregory White, Superintendent of the State Correctional Institution at Pittsburgh, and Joseph P. Mazurkiewicz, Superintendent of the State Correctional Institution at Rockview, and the Commonwealth of Pennsylvania, Respondents.

Civil Action No. 97–2561.

United States District Court, E.D. Pennsylvania.

April 16, 1997.

Billy H. Nolas, Robert Brett Dunham, Center for Legal Education, Advocacy & Defense Assistance, and Kathy Swedlow, Defender Assoc. of Philadelphia, Philadelphia, PA, for petitioner.

Ronald Eisenberg, Catherine Marshall, and Donna K. Zucker, District Attorney's Office of Philadelphia, Philadelphia, PA, for Respondents.

*BENCH MEMORANDUM*

VAN ANTWERPEN, District Judge.

### I. *BACKGROUND*

This case comes before us by way of a motion filed by persons claiming "next friend" standing in which they seek to halt the impending imposition of a state court sentence of death upon the petitioner, Gary Heidnik. Specifically, those claiming "next

friend" status seek *in forma pauperis* status, a stay of execution pursuant to *McFarland v. Scott*, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), appointment of federal habeas corpus counsel, and formal next friend standing. This motion was filed on the morning of April 15, 1997, and the execution of petitioner, Gary Heidnik, was scheduled for 10:00 p.m. that same day. Because of the last minute nature of this motion, we scheduled an immediate court hearing at 10:15 o'clock a.m. on April 15, 1997 for the purpose of clarifying the issues and determining the status of this matter.

Both counsel noted at our initial hearing that a prior hearing had been held the previous day in the Court of Common Pleas for the First Judicial District to determine whether or not the petitioner, Gary Heidnik, was competent to be executed under the standard of *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). At this state court hearing the petitioner, Gary Heidnik, stated that he wanted his execution to proceed. While our court hearing was in progress, word was received that Judge Poserina of the Court of Common Pleas had signed and handed down 38 detailed findings of fact in which he concluded that the petitioner, Gary Heidnik, was competent to be executed. Those findings of fact, along with the record of the state court proceeding, and a curriculum vitae of one of the witnesses in that proceeding, a Dr. O'Brien, have all been filed of record in our court. The decision of Judge Poserina of the Court of Common Pleas, along with his findings of fact and conclusions of law, were appealed to the Supreme Court of Pennsylvania. At the time of our instant Memorandum and Order, the Supreme Court of Pennsylvania has not yet ruled.

In addition to our initial hearing, six on-the-record telephonic conferences were held with all counsel and with Syndi Guido, Esquire, counsel for the Governor and the Pennsylvania Department of Corrections. The first of these was at 12:10 p.m. At that time, Attorney Guido noted that unless a stay was entered, the Department of Corrections was taking the position that it would transport the petitioner to the State Correctional Institution at Rockview where his execution was scheduled to take place. We declined to enter a stay at that point in time. It was also stated by counsel for petitioner that two of the people seeking next friend status were Maxine Davison White, a 19 year-old daughter of petitioner, and his former wife, Betty Heidnik.

The Pennsylvania Department of Corrections began transporting the petitioner Gary Heidnik to the State Correctional Institution at Rockview and we continued an intensive review of the applicable legal standards. We noted that although the state court judge had conducted a detailed analysis of petitioner's competency to be executed under the standard of *Ford v. Wainwright*, there had been no express findings with regard to whether or not the petitioner had given a knowing, intelligent and voluntary waiver of his right to proceed in federal court under the standard of *Whitmore v. Arkansas*, 495 U.S. 149, 162, 110 S.Ct. 1717, 1726–27, 109 L.Ed.2d 135 (1990). There were certainly detailed findings by Judge Poserina of the state court that the petitioner Gary Heidnik did not wish to pursue any further appeals (*see* Findings of Fact 16, 25 and 27). In the automatic appeal of the petitioner Gary Heidnik's death sentence, the Supreme Court of Pennsylvania noted that "appellant has since expressed his desire to have his execution carried out as expeditiously as possible and has, consequently, instructed counsel not to pursue the aforesaid appeal." *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687, 689 (1991).

In an abundance of caution we scheduled another on-the-record telephone conference at 2 o'clock P.M. and after conferring with counsel, we issued a stay of execution for the sole purpose of holding a hearing to determine whether or not we had jurisdiction to consider the application, which involved a discussion of whether the petitioner, Gary Heidnik, had given an appropriate waiver under *Whitmore*. The petitioner was stopped en route to the State Correctional Facility at Rockview and brought to the Federal Courthouse in Philadelphia for a tentative hearing at 7 o'clock P.M. There was an additional on-the-record telephone conference at 3:15 P.M. at which we discussed

witness availability, scheduling and the use of a court room with facilities for the taking of testimony by telephone. We also noted that the Supreme Court of Pennsylvania had issued a stay of execution which extended [1] to 2 o'clock P.M. on April 16, 1997. This conference was followed by an on-the-record telephonic conference at 4:30 o'clock P.M. at which we confirmed the tentative hearing at 7 o'clock P.M.

We held a hearing in open court from 7 o'clock P.M. to shortly after Midnight on April 15, 1997. By special order the courthouse was kept open to the public during the hearing. At the hearing, the counsel for the petitioner, Gary Heidnik, called three expert witnesses: Dr. Lawson Frederick Bernstein, Jr., Dr. Stewart Wellman, and Dr. Clancy McKenzie. The Commonwealth called Dr. John Sebastian O'Brien, II. The petitioner, Gary Heidnik, was present in court throughout the proceedings, but was not called as a witness. Heidnik was returned to the State Correctional Institution at Graterford at the conclusion of the court hearing. A follow-up on-the-record telephonic conference was held at Noon on April 16, 1997 to make it clear that our existing stay of execution would extend until we rendered our written decision in this matter. An additional follow-up on the record telephone conference was held at 3:30 P.M. on April 16, 1997 to hear argument on the issue of exhaustion and to receive a stipulation that to the extent that exhaustion might apply, the parties stipulated that we could properly consider jurisdictional issues. All proceedings have been transcribed on an expedited basis and filed of record. Late on April 16, 1997 counsel for those seeking "next friend" status made an application for a Certificate of Appealability in the event that we deny their application.

## II. *DISCUSSION*

### A. *Standing*

■ Before we can consider the merits of a legal claim, the persons who seek to invoke the jurisdiction of our court must establish the requisite standing to sue.

*Whitmore,* 495 U.S. at 154, 110 S.Ct. at 1722. Heidnik's ex-wife, Betty Heidnik, and daughter, Maxine Davidson White, claim standing based not on direct injury but on "next friend" status, which is by no means automatic. To establish next friend status *Whitmore* requires that "first, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action.... [and] second 'next friend' must be truly dedicated to the best interest of the person on whose behalf he seeks to litigate." *Id.* at 163, 110 S.Ct. at 1727. Moreover, the first prerequisite is not satisfied when an evidentiary hearing demonstrates that "the defendant has given a knowing, intelligent and voluntary waiver of his right to proceed, and his access to court is otherwise unimpeded." *Id.* at 165, 110 S.Ct. at 1728. The burden of proof is, of course, on the parties wishing to be a next friend to clearly establish meaningful evidence to allow us to determine the propriety of his status. *Id.* at 164, 110 S.Ct. at 1727–28, *Brewer v. Lewis,* 989 F.2d 1021, 1026 (9th Cir.1993).

The *Whitmore* standard has been further illuminated by *Rees v. Peyton,* 384 U.S. 312, 314, 86 S.Ct. 1505, 1506–07, 16 L.Ed.2d 583 (1966), which stated that we must decide "whether [the petitioner] has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or, on the other hand, whether he is suffering from a mental disease, disorder, or defect, which may substantially affect his capacity" to make such a rational choice.

■ We note that the standards for competency are remarkably similar per *Godinez v. Moran,* 509 U.S. 389, 397–98, 113 S.Ct. 2680, 2685–86, 125 L.Ed.2d 321 (1993), for such pretrial determinations as ability to waive counsel and ability to waive a constitutional right; however, while "due process does not require a higher standard, it requires a separate inquiry." The Third Cir-

---

1. We were initially incorrectly informed that the stay of execution only extended to 12 o'clock Noon. At approximately 2 o'clock P.M. on April 16, 1997, this stay was further extended until such time as the Supreme Court of Pennsylvania disposed of the issues before it.

cuit, for instance, has found that the competency necessary to waive the right to counsel is identical to the competency necessary to stand trial. *Government of the Virgin Islands v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995). We judicially notice the fact that Gary Heidnik was extensively colloquied by trial Judge Lynn Abrahams prior to the start of his jury trial and found competent to proceed. Fed.R.Evid. 201(a)–(c).

■ We could presume for purposes of this inquiry that the petitioner's ex-wife and daughter satisfy the second prong of the *Whitmore* standard, and the Commonwealth did not require proof of this prong and allowed us to receive affidavits establishing this without objection. (4/15/97, Evening Hearing, p. 141–142). However, we believe that those seeking "next friend" status have not met their burden of proof and clearly established incompetency under the first prong. We begin by noting that the *Whitmore* inquiry we make is different than the *Ford* inquiry made by Judge Poserina of the state court. There are important factual differences as well. Judge Poserina had the benefit of testimony from Gary Heidnik, whereas petitioner's counsel elected not to present his testimony in our April 15, 1997 evening hearing. Furthermore, three expert witnesses testified before us who did not testify before Judge Poserina.

On the evidence before us, we find that the petitioner, Gary Heidnik, has a history of suffering from mental illness in the form of paranoid schizophrenia. This was testified to by the experts called by petitioner and the Commonwealth expert, Dr. O'Brien, acknowledged that such a history existed. Dr. O'Brien was of the opinion that Heidnik is not presently suffering from such mental illness. We believe and find that petitioner, Gary Heidnik, is presently suffering from mental illness in the form of paranoid schizophrenia as testified to by the experts called by petitioner.

The issue remains as to whether at this time, Heidnik's mental illness is substantially affecting his capacity to appreciate his position and make a rational choice with respect to continuing or abandoning habeas corpus proceedings in federal court. We find that

those seeking next friend status have not clearly established this by meaningful evidence. We first note that the experts called by those seeking next friend status all testified on cross-examination as follows: Dr. Bernstein testified that the existence of delusions and a diagnosis of paranoid schizophrenia does not preclude competence (4/15/97, Evening Hearing, p. 43). Dr. Wellman testified that the existence of delusions and a diagnosis of paranoid schizophrenia do not preclude an individual from being competent (4/15/97, Evening Hearing, p. 109). Dr. McKenzie testified that individuals who are suffering from paranoid schizophrenia can be capable of rational conduct. (4/15/97, Evening Hearing, p. 134).

Dr. O'Brien, who was called by the Commonwealth, testified to a reasonable medical certainty as follows with regard to the petitioner, Gary Heidnik:

He recurrently demonstrated an awareness of his current circumstances and based upon the representations he made to me and also the transcript of his testimony in the hearing yesterday, it is my opinion that he is clearly knowingly waiving his rights to appeal, in the sense that he knows that appeals are possible at this point in time and he is knowing that information and that he is facing death without the appeal, and he is knowingly terminating or declining to pursue further appeals. I don't think there is any dispute that he is intelligent ... I have not seen anything in the record or heard from Mr. Heidnik anything that would indicate that he is under duress of any sort, from external forces or internal forces, to give up his appeals.

(4/15/97, Evening Hearing, pp. 163–164).

Dr. O'Brien testified that even if Heidnik does have paranoid schizophrenia, it does not negate his opinion that Heidnik is cognitively intact, aware of his current situation and what he is facing, and is able to make a decision regarding waiver of his further appeals. (4/15/97, Evening Hearing, pp. 208, 211, 212). Based upon a full and thorough review of the entire record, we find that those seeking next friend status have not met their burden of proof with regard to incom-

petence but they have met their burden of proof with regard to showing that they are truly dedicated to the best interests of the petitioner, Gary Heidnik. Therefore, we find that they do not have standing before this court.

### B. *Ford Competency*

Even if we were to determine that Heidnik's ex-wife and daughter had standing in a full habeas corpus proceeding, we believe that we would be bound by the Court of Common Pleas ruling that Heidnik is competent under *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The Supreme Court held in *Ford* that because the Eighth Amendment prohibits the execution of a prisoner who is insane, a determination must first be made that the petitioner understands both the nature of his punishment and the reasons therefor. *Ford,* 477 U.S. at 410, 106 S.Ct. at 2602. The court further held that "a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." *Id. (citing Townsend v. Sain,* 372 U.S. 293, 312–313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963)). If the state court makes such determinations, they are entitled to a presumption of correctness upon federal habeas review. We may not overturn their findings unless we conclude that they are not fairly supported by the record. *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990); 28 U.S.C. § 2254(e). The Supreme Court has also held that a state court's conclusion regarding a defendant's competency is entitled to such a presumption. *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983).

■ On April 14, 1997, Judge Poserina held an extensive evidentiary hearing focused on the issue of Heidnik's competency per *Ford.* The attorneys for Heidnik's ex-wife and daughter called two witnesses: Heidnik himself and Dr. John O'Brien. Dr. O'Brien examined Heidnik for approximately an hour and a half and concluded that Heidnik understood his current circumstances, what he was facing, what the potential outcomes were, and why. Mr. Heidnik testified that he felt he was competent and understood the reasons for his impending execution. Subsequently, Judge Poserina concluded that Heidnik was competent. We believe that this hearing was full and fair, and that the conclusions Judge Poserina came to were supported by the record. Accordingly, under Section 2254(e)'s presumption of correctness the state court's factual findings as to Heidnik's competence is binding on this court, and are incorporated into the record before this court.

### C. *Exhaustion*

At this point in time we have before us an application under *McFarland v. Scott,* 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) and not an actual application for habeas corpus. In addition the parties expressly stipulated in the on-the-record telephone conversation at 3:30 p.m. on April 16, 1997 that the court could consider jurisdictional issues at any time and we deem this to be a waiver of any exhaustion requirement with regard to these issues. We also note that in its most recent form 28 U.S.C. § 2254(b)(2) now provides "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state." This appears to be consistent with prior caselaw. *Granberry v. Greer,* 481 U.S. 129, 135 n. 7, 107 S.Ct. 1671, 1675 n. 7, 95 L.Ed.2d 119 (1987). Accordingly, we believe that we can properly reach the issues discussed in Sections A and B above.

### III. CONCLUSION

For the foregoing reasons, we conclude that we are without jurisdiction in this matter.