EDITH H. JONES, Circuit Judge:
Appellant Cantu is scheduled for execution by the State of Texas on December 3, 1998, for the June, 1990 murder-for-hire of three members of an Abilene family. He has filed neither state nor federal habeas petitions seeking to vacate his capital murder conviction. Instead, he filed in the federal district court only a motion to stay execution and for appointment of counsel, and those requests were initiated after his right to obtain federal relief has facially prescribed.
Cantu has moved this court for a stay of execution and appointment of counsel on appeal. We granted the motion for appointment of counsel on appeal, as the sole issue with which counsel is here concerned is the applicability of the statutory time bar.[1]
Cantu’s petition for federal habeas relief indisputably falls outside the one-year limit prescribed by Congress in the Antiterrorism and Effective Death Penalty Act (“AEDPA”) in order to bring regularity and finality to federal habeas proceedings. Cantu does not contest that his petition is facially untimely. Instead, he argues that the district court erred by failing to appoint him counsel under 21 U.S.C. § 848(q)(4)(B) and that it further erred in ruling on the limitations issues without allowing Cantu an opportunity to respond and without appointing counsel. Three questions are raised by Cantu’s position: (1) whether the McFarland case requires appointment of counsel for a death-row prisoner whose petition is time-barred by AED-PA; [2] (2) whether, under a narrow reading of McFarland, § 848(q)(4)(B) counseled appointment of counsel at least concerning the possibility of equitable tolling of the statute of limitations; and (3) whether, given the undisputed facts surrounding the progress of Cantu’s ease in state and federal courts, no ground for equitable tolling or for a stay of execution exists.
Our conclusions may be succinctly stated. First, neither McFarland nor § 848(q)(4)(B) requires appointment of counsel for the wholly futile enterprise of addressing the merits of a time-barred habeas petition. Second, the court may appoint counsel to represent a death-row inmate for purposes of litigating *297 the applicability of the limitations bar only, with sufficient time constraints to maintain the integrity of the limitation period. Third, where, as in this case, the facts that might be relevant to equitable tolling of limitations are undisputed and are wholly unfavorable to the petitioner, the court may deny a stay. We therefore deny the stay of execution.
BACKGROUND
Cantu is no stranger to self-representation. He dismissed his court-appointed attorney and represented himself on direct appeal to the Texas Court of Criminal Appeals.[3] His direct appeals terminated with the denial of certiorari by the Supreme Court in February, 1995. See Cantu v. Texas, 513 U.S. 1171, 115 S.Ct. 1145, 130 L.Ed.2d 1104.
Cantu never filed a petition for state habe-as relief. Rathei[1], after eluding the first execution date,[4] he sought appointment of counsel in the state court system. His first attorney was forced to withdraw because of a conflict of interest, but his second attorney cited “irreconcilable differences” with Cantu and was permitted to withdraw. Cantu requested dischax-ge of Ingalsbe, his third court-appointed attorney, because Cantu thought for various x-easons that Ingalsbe was not representing him effectively. A state court hearing was held in August 1997 in response to Cantu’s self-styled “Motion for the Dismissal of State Habeas Counsel and for Self-Representation.” The state trial court found that Cantu preferred to proceed pro se if his only choices were to continue to be represented by Ingalsbe or by any other attoi'ney from Abilene; that Cantu did not want to be represented by Ingalsbe or any other attorney from Abilene; that Cantu was capable of repi'esenting himself in a post-conviction pi'oceeding; and that Cantu knowingly and voluntarily waived the right to counsel if his only other choices wex-e to be represented by Ingalsbe or another Abilene attorney. These findings, referred to the Texas Court of Criminal Appeals, resulted in an order discharging Ingalsbe on September 3.1997, and permitting Cantu to proceed pro se.
After the September 3, 1997 order, Cantu and a would-be habeas attorney filed motions requesting the Texas Court of Criminal Appeals to reconsider appointment of counsel, but their motions were denied on November 19.1997. Cantu then did nothing.
On October 14, 1998, more than a year after Cantu had been instructed to proceed pro se, the state convicting court set his execution date for December 3, 1998. Cantu filed a motion for appointment of counsel and stay of execution in the federal district court on November 3, 1998. Relying on McFarland, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666, Cantu assex-ted his right to counsel in advance of filing a habeas petition on the mei'its. The state x’esponded by ui'g-ing application of AEDPA’s one-year limitation on federal habeas petitions, 28 U.S.C. § 2244(d)(1), and the consequent inapplicability of McFarland. The state did hot, however, contest the appointment of counsel solely for the purpose of repx-esenting Cantu in the l'esolution of the statute of limitations issue.
On November 14, 1998, the district court entered an order finding that Cantu “engaged in dilatory tactics which allowed the one-year limitations period established by the Anti-Terrorism and Effective Death Penalty Act to expire.” Cantu v. Johnson, No. 98-CV-236-C (N.D.Tex. Nov. 14,1998) (order denying appointment of counsel and stay of execution). The court further concluded that Cantu had “ ‘flout[ed] the available processes’ with his inaction and dilatory tactics.” Id., quoting McFarland, 512 U.S. at 858, 114 S.Ct. at 2573. On this basis, the court denied the motions for appointment of counsel and for stay of execution, and it denied a certificate of appealability.
*298 DISCUSSION
There can be no doubt that Cantu’s attempt to invoke federal habeas jurisdiction is time-barred. The AEDPA, which became effective April 24, 1996, enacted a one-year period of limitation for federal habeas proceedings that runs, unless tolled, from the date on which the petitioner’s conviction became final at the conclusion of direct review or during the pendency of a “properly filed application for State post-conviction or other collateral review.” § 2244(d)(2). 28 U.S.C. § 2244(d)(1)(A).[5] Cantu’s judgment became final on February 21, 1995. A strict construction of the statute would have prevented his seeking federal habeas relief after February 21, 1996, two months prior to enactment of the AEDPA. The Fifth Circuit has, however, permitted petitioners a “reasonable time” after enactment of the statute, i.e. until April 24, 1997, to file their habeas applications. See Flanagan v. Johnson, 154 F.3d 196, 200 (5th Cir.1998). Further, in “rare and exceptional circumstances,” this court has held that the one year limitations period may be equitably tolled. Davis v. Johnson, 158 F.3d 806, 811 (5th Cir.1998), petition for rehearing pending.
In an additional twist favorable to Cantu, the Texas Attorney General’s office agreed in a class action settlement to toll the time from request until appointment of state habeas counsel in the Texas Court of Criminal Appeals, for petitioners like Cantu who did not have a state writ of habeas corpus pending on December 2, 1996. Pyles v. Morales, No. 396-CV-2838-D (N.D.Tex. Dee. 2, 1996) (Agreed Order of Dismissal Without Prejudice). A generous reading of the Pyles agreement suggests that Cantu’s state proceedings regarding appointment of counsel would not be counted for limitations purposes until the Court of Criminal Appeals ordered Cantu to proceed pro se on September 3, 1997.[6] Applying the AEDPA limitations period of one year from that date, it could be determined that Cantu could have filed a timely federal petition for writ of habeas corpus until September 3,1998.
Instead, from September 3, 1997 until today, Cantu has never filed a petition for habeas relief in either state or federal court. The express AEDPA limitation has clearly expired.
Applying the McFarland decision with full force to this case cannot be correct. In McFarland, the Supreme Court interpreted 28 U.S.C. § 848(q)(4)(B), the statute affording court-appointed counsel to death row habeas petitioners, both to initiate a federal habeas proceeding and to authorize in most instances, the granting of a stay of execution even before a petition on the merits had been filed. McFarland, however, predates AED-PA’s passage of a specific habeas limitation period, and even though AEDPA did not expressly modify the death row petitioner’s right to counsel, it took the more onerous step of cutting off the availability of any federal court review after the limitation has run. Appointment of counsel for a capital-convicted defendant would be a futile gesture if the petitioner is time-barred from seeking federal habeas relief. Moreover, granting a stay of execution in such circumstances would directly undermine Congress’s purpose in passing a statute of limitations.
Indeed, confirmation that a statutory limitations period should be enforced appears in the Supreme Court’s later decision in Lonchar v. Thomas, 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996). The tenor of the majority discussion in Lonchar is that federal courts should not intervene to create equitable reasons for denying stays of execution when federal law and the habeas rules have prescribed principles applicable to the complex mix of equities in capital cases. See id. 517 U.S. at 326-27, 116 S.Ct. at 1301. By *299 the same token, however, when Congress has stepped in to balance the competing interests, as it did in AEDPA, courts should be loath to evade that balance. McFarland, which represents a judicial gloss on the appointment-of-counsel statute, should not impede application of a later-enacted limitation period on federal habeas relief.
This is not to say that death row inmates may never file initial federal habeas petitions more than one year after the conclusion of direct or collateral review proceedings. First, the conditions to the one-year bar contained in § 2244(d)(1) may apply. See supra note 5. Second, this court has recently held that the limitations period of AEDPA is subject to “equitable tolling” in “rare and exceptional circumstances.” Davis, 158 F.3d at 811. Where a petition lends itself to the interpretation that rare and exceptional circumstance may pertain, and hence that the petitioner is entitled to seek federal relief on the merits, a narrower reading of McFarland may require appointment of counsel solely to resolve limitations questions. While the delay occasioned by appointment of counsel and determining the application of the statute of limitations would marginally infringe the AEDPA limit, these delays fulfill a long-recognized exception to limitations statutes. See id. 158 F.3d at 811. Further, appointment of counsel on such a limited basis may be handled expeditiously by the trial court and with due regard for Congress’s intent to circumscribe federal habeas relief.
But even if we incorrectly surmise that a broad reading of McFarland is generally inconsistent with the enactment of § 2244(d), McFarland still does not guarantee an automatic stay of execution for capital defendants. While McFarland ensures a right to counsel that “necessarily includes a right for that counsel meaningfully to research and present a defendant’s habeas claims,” it also emphasizes that the grant of a stay is ultimately discretionary. McFarland, 512 U.S. at 858, 114 S.Ct. at 2573. As a result,
If a dilatory capital defendant inexcusably ignores this opportunity [to secure counsel] and flouts the available processes, a federal court presumably would not abuse its discretion in denying a stay of execution.

Id.

The record of proceedings in the state court, which was furnished to the district court and this court during the course of Cantu’s attempt to secure federal habeas relief, demonstrates his disdain for and lack of cooperation with state access-to-counsel procedures and the AEDPA deadline.
Over thirteen months, from August 1996 to September 1997, Cantu was appointed three separate attorneys to represent him in state post-conviction proceedings. One cited irreconcilable differences with Cantu. The last one was dismissed at Cantu’s request. Cantu insisted on trying to call the shots with the state courts when he insisted that Ingalsbe, the third lawyer, should no longer represent him, and further that no attorney from Abilene should be appointed to represent him, although the crime occurred in Abilene and the convicting court was located there, and that he would rather represent himself than endure those alternatives. He should not be heard to complain that the Texas courts found him capable of self-representation and then allowed him to undertake it, as he requested exactly that relief and had previously dismissed a court-appointed counsel and represented himself on direct appeal. ,Yet Cantu persisted in complaints that a fourth lawyer should be appointed for him. Cantu thus flouted the state court’s procedures and passed up the opportunity to pursue habeas relief on the merits.
Cantu’s appellate counsel suggest that fact issues exist that would predicate equitable tolling on the state’s failure to appoint Cantu a competent habeas counsel. He supports this position in two ways. First, he implies that Ingalsbe, the third state-appointed attorney, was incompetent. This attack grossly mischaracterizes Ingalsbe’s experience as a district attorney, criminal law practitioner for over 20 years, 1967 graduate of Baylor Law, and participant in capital and habeas cases. As the state court found, Ingalsbe had obtained Cantu’s file from the Texas Resource Center and was reviewing it before Cantu moved to dismiss him. He testified *300 that he planned to file a habeas petition within the deadline set by the Texas Court of Criminal Appeals.
Second, Cantu assaults the Texas courts’ findings that he was capable of self-representation and voluntarily elected that option rather than to have Ingalsbe or any Abilene attorney represent him. Inmates are not entitled to court-appointed counsel of their choice. United States v. Breeland, 53 F.3d 100, 106 n. 11 (5th Cir.1995); Malcom v. State, 628 S.W.2d 790, 791 (Tex.Crim.App. 1982). Cantu chose self-representation rather than the choice he was offered by the state. The circumstances that Cantu alleges to support equitable tolling thus rest on an incomplete recitation of the record, backtracking on his expressed choice of self-representation, and a misunderstanding of an inmate’s ability to control the choice of court-appointed counsel.
His approach to the federal courts has been no more praiseworthy. A bevy of pleadings filed with the Texas Court of Criminal Appeals throughout 1997 demonstrates that Cantu was well aware of the AEDPA limitation period for seeking federal habeas relief. See Appellant’s Objection to Court’s September 2, 1997 Findings, Record at Tab 16 n. 1, Cantu v. Texas (No. 71,314); Hearing Requesting Self Representation, Record at Tab 13 p. 6 (No. 10,172 — B); Motion to File Skeletal Application for Writ of Habeas Corpus, Record at Tab 21 p. 6-7 (No. 71,314). He was also aware of the Pyles agreement extending the AEDPA limit under certain circumstances. See Record at Tab 21 p. 6 (No. 71,314). Once he was ordered to proceed in habeas pro se, however, Cantu did nothing. He did not preserve his collateral review rights in state court, which would have tolled the AEDPA limitation, and he made no effort to obtain federal relief for over a year, until after an execution date had been scheduled and after the AEDPA deadline had unquestionably passed.
Cantu’s course of conduct demands application of the exception to McFarland, if McFarland would otherwise apply here. Further,' it contradicts any possibility that equitable circumstances exist which might authorize a tolling of the AEDPA limitation period.
For all of these reasons, we conclude that any attempt by Cantu to seek federal habeas relief at this point is time-barred under the limit expressly contained in AEDPA, this court’s caselaw, and a generous interpretation of the Pyles agreement; that Cantu was not entitled to appointment of counsel on the merits of a habeas petition, although he may have been entitled to be represented by counsel for the sole purpose of litigating the limitation issue; and that the fully-developed record of state proceedings demonstrates the unavailability of equitable tolling of the AED-PA limitations period.
We DENY Cantu’s request for a stay of execution; motion for appointment of counsel on appeal, limited to the issues before us is GRANTED. To the extent a certificate of appealability is necessary, although it was not requested by petitioner, it is DENIED.

. On November 30, 1998, Mandy Welch and A. Richard Ellis were appointed as counsel on appeal for these purposes.

. McFarland v. Scott, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994).

. Counsel was appointed for him in a motion for rehearing in the Texas Court of Criminal Appeals and on the petition for certiorari.

. In 1995, Cantu filed a motion for stay and appointment of counsel in federal district court, following the procedure set forth in McFarland, 512 U.S. at 852 n. 1, 114 S.Ct. at 2570 n. 1. The case was voluntarily dismissed, however, when the State of Texas passed a law affording court-appointed counsel for state habeas proceedings to indigent death-row inmates.

. Other triggering provisions for the one-year bar, contained in subsections (B), (C), and (D) of § 2244(d)(1), are not material here.

. Other interpretations of the Pyles agreement are possible. For instance, it could be decided that the tolling there authorized ceased to run upon the appointment of Cantu's second habeas counsel, who was later dismissed for "irreconcilable differences.” If so, the AEDPA limitation would have ended several months earlier than the date we have calculated. As the State suggests, it is unnecessary for us to construe the impact of the Pyles agreement definitively, and we have not done so.